**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

---

LOOP, LLC, D/B/A AUTOLOOP, on behalf of
itself and all others similarly situated,

        Plaintiff,

   v.
                              Case No. 3:24-cv-00571-jdp

CDK GLOBAL, LLC,

        Defendant.

---

**THE VENDOR CLASS'S UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF A
PROPOSED SETTLEMENT AND SCHEDULE FOR FINAL APPROVAL**

---

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .............................................................................................................. 1

LITIGATION HISTORY AND PROPOSED SETTLEMENT ........................................... 4

   I.   Litigation History ..................................................................................................... 4

   II.  The Proposed Settlement ....................................................................................... 7

   III. The Proposed Distribution Plan ............................................................................ 8

   IV. The Proposed Notice Plan ..................................................................................... 9

ARGUMENT ................................................................................................................... 10

   I.   The Proposed Settlement And Distribution Plan Should Be Preliminarily Approved ... 10

      A.  The Court Will Likely Be Able Grant Final Approval Of The Proposal ................. 10

         1.   AutoLoop And Class Counsel Have Adequately Represented The Vendor Class Throughout This Litigation ................................................................. 10

         2.   AutoLoop And Class Counsel Negotiated The Settlement Agreement With CDK At Arm's Length ..................................................................................... 11

         3.   The Vendor Class Will Receive Extraordinary Relief After The Efforts Of Class Counsel And AutoLoop Are Appropriately Compensated .................... 12

         4.   The Proposed Distribution Plan Treats Class Members Equitably ................. 17

      B.  The Proposed Settlement Applies To The Already-Certified Class ........................ 18

   II.  The Proposed Notice Plan Should Be Approved ............................................... 19

   III. The Court Should Adopt The Proposed Schedule ............................................. 21

CONCLUSION ................................................................................................................ 22

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ackley v. Marathon Cheese Corp.*, 2024 WL 4006212 (W.D. Wis. Aug. 30, 2024) ...................17

*Allegretti v. Walgreen Co.*, 2021 WL 5119759 (N.D. Ill. Nov. 1, 2021) ......................................11

*American Bank Note Holographics, Inc.*, *In re*,
    127 F. Supp. 2d 418 (S.D.N.Y. Jan. 2, 2001) ..................................................................12

*AT&T Mobility Wireless Data Servs. Sales Litig.*, *In re*,
    270 F.R.D. 330 (N.D. Ill. Aug. 11, 2010)...........................................................................20

*Blihovde v. St. Croix Cnty.*, 2003 WL 23200374 (W.D. Wis. Apr. 25, 2003).............................19

*Brand Name Prescription Drugs Antitrust Litig.*, *In re*,
    1996 WL 167347 (N.D. Ill. Apr. 4, 1996) ........................................................................21

*Broiler Chicken Antitrust Litig.*, *In re*,

    2024 WL 3292794 (N.D. Ill. July 3, 2024), *appeal pending*,
    No. 24-2387 (7th Cir. filed Aug. 9, 2024) .........................................................................15

    80 F.4th 797 (7th Cir. 2023) ............................................................................................15

*Burnett v. Conseco Life Ins. Co.*, 2020 WL 4207787 (S.D. Ind. July 22, 2020) ..........................11

*Carnegie v. Household Int'l, Inc.*, 445 F. Supp. 2d 1032 (N.D. Ill. 2006) ...................................13

*Chesemore v. Alliance Holdings, Inc.*, 2014 WL 12730484 (W.D. Wis. Apr. 9, 2014) ...............14

*City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902 (S.D. Ill. 2012) ...........12, 16

*Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002),
    *cert. denied*, 573 U.S. 1148 (2003).....................................................................................14

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ......................................................................17

*Corzo v. Brown Univ.*, 2024 WL 3506498 (N.D. Ill. July 20, 2024).........................................15

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) ......................................................20

*Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317 (S.D.N.Y. 2005),
    *aff'd in relevant part*, 443 F.3d 253 (2d Cir. 2006) .........................................................20

*DMS Antitrust Litig.*, *In re*,

    2023 WL 4297643 (N.D. Ill. June 29, 2023) ........................................................6

    2024 WL 3509668 (N.D. Ill. July 22, 2024) .......................................... 6, 8, 10-11, 18

    291 F. Supp. 3d 1367 (J.P.M.L. 2018) ..............................................................5

    581 F. Supp. 3d 1029 (N.D. Ill. 2022) ............................................................18

    680 F. Supp. 3d 919 (N.D. Ill. 2023) ............................................................5-6

*Domann v. Summit Credit Union*, 2020 WL 1847868 (W.D. Wis. Apr. 13, 2020) .....................16

*Glaberson v. Comcast Corp.*, 2015 WL 5582251 (E.D. Pa. Sept. 22, 2015) ..............................16

*Groshek v. Great Lakes Higher Educ. Corp.*,
    2016 WL 4690318 (W.D. Wis. Apr. 13, 2016) ....................................................14

*Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) .................13

*Harvey v. Community Health Network, Inc.*,
    2023 WL 3240878 (S.D. Ind. May 3, 2023) ......................................................11

*High-Tech Emp. Antitrust Litig.*, *In re*, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) .................17

*HIV Antitrust Litig.*, *In re*, 2023 WL 11897610 (N.D. Cal. Sept. 25, 2023) ......................... 20-21

*Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291 (S.D. Miss. Mar. 25, 2014) ...........................12

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
    2015 WL 13546111 (W.D. Wis. Jan. 5, 2015) ...................................................16

*Linman v. Marten Transp., Ltd.*, 2024 WL 2974831 (W.D. Wis. June 13, 2024) .............10, 12, 15

*Low v. Trump Univ., LLC*, 881 F.3d 1111 (9th Cir. 2018) ......................................................20, 21

*Marchbanks Truck Serv., Inc. v. Comdata Network, Inc.*,
    2014 WL 12738907 (E.D. Pa. July 14, 2014) ....................................................17

*Mathur v. Board of Trs. of S. Ill. Univ.*, 317 F.3d 738 (7th Cir. 2003) ........................................15

*Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161
    (N.D. Cal. June 5, 2017) ............................................................................17

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ...................................................12

*Scrap Metal Antitrust Litig.*, In re, 527 F.3d 517 (6th Cir. 2008)...................................13

*Sjunde AP-Fonden v. General Elec. Co.*, 2025 WL 89271 (S.D.N.Y. Jan. 14, 2025) .................21

*Suboxone Antitrust Litig.*, In re, 2023 WL 8437034 (E.D. Pa. Dec. 4, 2023) ..............................16

*Suboxone Antitrust Litig.*, In re, 2024 WL 815503 (E.D. Pa. Feb. 27, 2024)................................12

*Synthroid Mktg. Litig.*, In re, 264 F.3d 712 (7th Cir. 2001) ......................................................15

*Urethane Antitrust Litig.*, In re, 768 F.3d 1245 (10th Cir. 2014),
    *cert. dismissed*, 579 U.S. 969 (2016) ............................................................................13, 14

*Velez v. Novartis Pharms. Corp.*, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010).........................17

*Williams v. Rohm & Haas Pension Plan*, 2010 WL 4723725 (S.D. Ind. Nov. 12, 2010),
    *aff'd*, 658 F.3d 629 (7th Cir. 2011)......................................................................................16

## COURT PLEADINGS

Complaint, *Authenticom, Inc. v. CDK Global, LLC*, No. 17-318
    (W.D. Wis. filed May 1, 2017), Dkt. 1 ...................................................................4

Complaint, *Cox Automotive, Inc. v. CDK Global, LLC*, No. 17-925
    (W.D. Wis. filed Dec. 11, 2017), Dkt. 1 ................................................................5

*DMS Antitrust Litig.*, In re, 18-864 (N.D. Ill.):

    Amended Complaint (June 5, 2018), MDL Dkt. 191 ...........................................5

    Dealer Class Plaintiffs' Unopposed Motion for Preliminary Approval of
    Settlement with CDK and for Conditional Certification of the Proposed
    Settlement Class (Aug. 16, 2024), MDL Dkt. 1528 ...........................................13

    Preliminary Approval Order for Settlement Between Dealer Class Plaintiffs
    and CDK (Aug. 23, 2024), MDL Dkt. 1531 .......................................................13

Complaint, *Loop, LLC v. CDK Global, LLC*, No. 18-2521
    (N.D. Ill. filed Apr. 9, 2018), Dkt. 1 .....................................................................5

Complaint, *MVSC v. CDK Global, Inc.*, No. 17-896
    (C.D. Cal. filed Feb. 3, 2017), Dkt. 1 ...................................................................4

## FEDERAL RULES

Fed. R. Civ. P. 23 ...................................................................................................21

    (e) ...............................................................................................................1

    (e)(1) .............................................................................................10, 18, 19

    (e)(1)(B) ...............................................................................................10, 19

    (e)(1)(B)(ii) ...................................................................................................18

    (e)(2) ............................................................................................................10

    (e)(2)(A) ......................................................................................................10

    (e)(2)(B) ......................................................................................................11

    (e)(2)(C) ......................................................................................................12

    (e)(2)(C)(i) ...................................................................................................13

    (e)(2)(C)(iii) .................................................................................................14

    (e)(2)(D) ......................................................................................................17

    (e)(3) ...........................................................................................................11

    (e)(4) ...........................................................................................................20

    (h) ...............................................................................................................16

Fed. R. Civ. P. 23(e) 2018 advisory committee's note to 2018 amendment ...................18

## OTHER MATERIALS

2 McLaughlin on Class Actions § 6:21 (21st ed. 2024) ............................................21

3 Newberg on Class Actions § 8:32 (4th ed. 2010) ..................................................20

Standard Attachments for Civil Cases Assigned to Judge Peterson,
https://www.wiwd.uscourts.gov/sites/default/files/Attachments_PTC_JDP.pdf ...........15

U.S. Courts of Appeals Judicial Business (Sept. 30, 2023), Table B-4A,
https://www.uscourts.gov/data-news/data-tables/2023/09/30/judicial-business/b-4a .................13

## INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Vendor Class respectfully requests that the Court preliminarily approve the settlement between the Vendor Class and CDK Global, LLC ("CDK"), which was achieved after years of work and on the eve of trial. The settlement provides for the payment of $630 million by CDK to the Vendor Class, which is $140 million *above* the Vendor Class's single damages of $490 million that it would have sought at trial. This provides extraordinary benefit to the Vendor Class. A pre-verdict settlement of ***130 percent*** of joint-and-several damages is rare and exceptional.

More than eight years ago, Michael Nemelka of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen") got a call from an automotive software company called Motor Vehicle Software Corporation ("MVSC"), alleging a joint effort by Defendant CDK and its main rival, The Reynolds and Reynolds Company ("Reynolds"), to shut MVSC out of their respective data integration services. That telephone call started a multi-year investigation by Kellogg Hansen that resulted in the Vendor Class's claims here, which allege that CDK and Reynolds conspired to coordinate their data access policies and eliminate competition from independent data integrators, thereby forcing vendors to use CDK's and Reynolds's 3PA and RCI data integration services at inflated prices. Kellogg Hansen's work was not aided by any government agency investigation or prior private lawsuit; the firm risked enormous amounts of its own time and financial resources to investigate the alleged conspiracy on its own.

Companies across the automotive software industry sought Kellogg Hansen's help to obtain legal relief for the harm CDK and Reynolds had allegedly caused them. Kellogg Hansen and Godfrey & Kahn, S.C. ("Godfrey & Kahn") represented Authenticom, Inc. ("Authenticom") before this Court and obtained a preliminary injunction against CDK and Reynolds, which was later vacated. Kellogg Hansen and Godfrey & Kahn were also retained by Cox Automotive, Inc.

("Cox Automotive"), the largest automotive software vendor in the country; and by Loop, LLC, d/b/a AutoLoop ("AutoLoop"), which agreed to serve as named plaintiff in a class action on behalf of a nationwide class of automotive software vendors that purchased data integration services from CDK and Reynolds at prices allegedly artificially inflated by the conspiracy (the "Vendor Class"). The MDL court in the Northern District of Illinois appointed Kellogg Hansen as MDL Co-Lead Counsel and, along with Professor Samuel Issacharoff, class counsel to the Vendor Class ("Class Counsel"). A different set of plaintiffs – the putative indirect purchaser Dealer Class – based their lawsuits off of Kellogg Hansen's work, and the court appointed separate counsel for them given the possible conflict of Kellogg Hansen representing both the direct and indirect purchasers.

This Proposed Settlement (Exhibit 1)[1] is the culmination of eight years of investigation and zealous litigation that has achieved an extraordinary result for the Vendor Class:  $630 million, in four installments ($450 million immediately, and $60 million annually for three years).  As noted above, the settlement consideration exceeds by more than $140 million the alleged aggregate overcharges of $490 million paid to *both* CDK *and* Reynolds.  Given joint-and-several liability, the Vendor Class will recover substantial portions of the overcharges allegedly paid to Reynolds, without releasing any claims against Reynolds.

Class Counsel intend to submit an application for reimbursement of expenses of up to $20 million to recover Class Counsel's significant out-of-pocket investment over years of litigation. Class Counsel's proposal also contemplates that the Settlement Administrator may seek reimbursement of fees and costs up to $350,000 and that named-Plaintiff AutoLoop may seek a service award of up to $250,000 for the hundreds of hours it spent representing the interests of the

---

[1] Exhibits 1-3 refer to the contemporaneously-filed attachments to the Declaration of Michael N. Nemelka ("Nemelka Decl.").   Exhibit A refers to the contemporaneously-filed attachment to the Declaration of Orran L. Brown, Jr. ("Brown Decl.").

class – with $609.4 million remaining if the maximum amounts are sought and awarded. Consistent with the years of attorney time invested by Class Counsel, the substantial risk taken by Class Counsel, and the result achieved by Class Counsel, Class Counsel intend to seek fees of up to one-third of the settlement consideration remaining after deduction of the reimbursed costs, expenses, and awards. Class Counsel will pay other counsel that have represented the class at their direction (including Godfrey & Kahn) out of that fee award. If the full amounts set forth above are sought and awarded, approximately $406 million would remain for distribution to class members (the "Settlement Fund") so that each class member receives more than *82 percent* of their alleged damages.

Class Counsel have also taken steps in the Proposed Distribution Plan (Exhibit 2) to ensure that class members will receive every dollar of the Settlement Fund after deduction of fees and expenses. This is not a claims-made settlement and no funds will revert to CDK. Specifically, Class Counsel have identified the Vendor Class Members, and the damages expert for the Vendor Class (Dr. Mark Israel) has calculated each class member's share of the settlement based on their volume of purchases of CDK's 3PA and Reynolds's RCI data-integration services. The Settlement Administrator will issue payments to class members based on those calculations. The Proposed Distribution Plan ensures that class members will receive prompt payment.

In short, the Proposed Settlement readily satisfies the standards for preliminary approval. The Proposed Settlement provides extraordinary relief for the Vendor Class and is therefore more than fair and adequate. The Court should grant preliminary approval and direct notice of the Proposed Settlement to each of the identified class members using the Proposed Notice (Exhibit A) and then proceed to final approval and distribution of the funds to the Vendor Class.

## LITIGATION HISTORY AND PROPOSED SETTLEMENT

### I.    Litigation History

Over the course of eight years, Kellogg Hansen spent tens of thousands of hours investigating and vigorously litigating the antitrust conspiracy claims settled here.  In October 2016, MVSC, an automotive software vendor, engaged Kellogg Hansen to investigate potential antitrust claims against CDK and Reynolds.  *See* Nemelka Decl. ¶ 1.  Kellogg Hansen had to develop that case from scratch.  There was no government investigation or other litigation to draw from.  *See id.* ¶ 2.  Kellogg Hansen ultimately filed an antitrust complaint against CDK and Reynolds on behalf of MVSC on February 3, 2017.  *See MVSC v. CDK Global, Inc.*, No. 17-896 (C.D. Cal. filed Feb. 3, 2017).[2]

In the course of investigating claims on behalf of MVSC, another industry participant – data integrator Authenticom – hired Kellogg Hansen to investigate whether Authenticom had antitrust claims.  *See* Nemelka Decl. ¶ 3.  Kellogg Hansen again developed a case from scratch on behalf of a different type of plaintiff (a data integrator).  *See id.* ¶¶ 4-5.  Kellogg Hansen, along with Godfrey & Kahn, filed suit in this Court on behalf of Authenticom on May 1, 2017.  *See Authenticom, Inc. v. CDK Global, LLC*, No. 17-318 (W.D. Wis. filed May 1, 2017).  Many class-action lawsuits were subsequently filed on behalf of dealerships, literally cutting and pasting from Kellogg Hansen's Authenticom complaint and briefing.  *See* Nemelka Decl. ¶ 6.  These lawsuits led to the formation of an MDL in the Northern District of Illinois in February 2018.  *See In re DMS Antitrust Litig.*, 291 F. Supp. 3d 1367 (J.P.M.L. 2018).  While the MDL was being formed,

---

[2] MVSC was differently situated and not a potential member of the Vendor Class.  MVSC alleged that CDK and Reynolds had refused to allow MVSC to even purchase data integration services through 3PA and RCI because MVSC sold an application that competed with an application jointly owned by CDK and Reynolds.  The Vendor Class, by contrast, were members of the 3PA and RCI programs, but they paid for that data integration at allegedly inflated prices.

two other vendors – Cox Automotive (the largest automotive dealer software vendor) and AutoLoop – hired Kellogg Hansen, which filed complaints on their behalf in December 2017 and April 2018, respectively.  *See Cox Automotive, Inc. v. CDK Global, LLC*, No. 17-925 (W.D. Wis. filed Dec. 11, 2017); *Loop, LLC v. CDK Global, LLC*, No. 18-2521 (N.D. Ill. filed Apr. 9, 2018). AutoLoop subsequently took on the burden of being the sole class representative by filing an amended complaint on June 5, 2018, that asserted claims on behalf of a nationwide class of automotive software vendors.  *See* MDL Dkt. 191.[3]  The MDL court (with Judge St. Eve then presiding before her elevation to the Seventh Circuit) appointed Kellogg Hansen Co-Lead Counsel of the MDL and interim class counsel for the putative direct purchaser Vendor Class, with another firm being appointed Co-Lead Counsel of the MDL and interim class counsel for the putative indirect purchaser Dealer Class.  *See* Nemelka Decl. ¶¶ 9-10.

From mid-2018 to February 2020, Kellogg Hansen engaged in extensive fact and expert discovery, taking or defending 67 party depositions, 20 expert depositions, and 19 third-party depositions; and reviewing millions of documents from over 100 parties and third-parties.  *See id.* ¶ 13(a).  From February 2020 through September 2020, Kellogg Hansen briefed nine *Daubert* motions and six motions for summary judgment.  *See id.* ¶ 13(b).  On January 21, 2022, the MDL court (with Judge Dow then presiding before becoming Counselor to Chief Justice Roberts) entered an omnibus *Daubert* ruling largely denying challenges to the Vendor Class's experts.  *See In re DMS Antitrust Litig.*, 581 F. Supp. 3d 1029 (N.D. Ill. 2022).  And on June 29, 2023, the MDL court (with Chief Judge Pallmeyer presiding) denied CDK's motions for summary judgment and granted AutoLoop's motion for summary judgment as to CDK's counterclaims.  *See In re DMS*

---

[3] At the MDL court's encouragement, the case was directly filed in the MDL court for administrative convenience, but the parties consented to a procedure whereby the case would be deemed filed in this Court.

*Antitrust Litig.*, 680 F. Supp. 3d 919 (N.D. Ill. 2023); *In re DMS Antitrust Litig.*, 2023 WL 4297643 (N.D. Ill. June 29, 2023).

From August 2023 through March 2024, Class Counsel engaged in another round of fact and expert discovery regarding class certification, including refreshes of data underlying the expert opinions. *See* Nemelka Decl. ¶ 13(c). From November 2023 through June 2024, Class Counsel briefed class certification for the Vendor Class and an additional round of *Daubert* motions. *See id.* ¶ 13(d). On July 22, 2024, Chief Judge Pallmeyer certified the Vendor Class and appointed Kellogg Hansen and Professor Issacharoff as Class Counsel to the Vendor Class. *See In re DMS Antitrust Litig.*, 2024 WL 3509668, at *18 (N.D. Ill. July 22, 2024). The MDL court subsequently transferred the Vendor Class case to this Court, which directed notice and an opportunity to opt out of the class to all possible class members. *See* Dkt. 74, at 5.

In October and November 2024, the Vendor Class and CDK engaged in supplemental fact and expert discovery, exchanging tens of thousands of documents, taking additional depositions regarding recent events, and supplementing expert opinions. *See* Nemelka Decl. ¶ 13(e). Throughout the fall of 2024 and early 2025, Kellogg Hansen and Godfrey & Kahn engaged in intensive preparation for the trial, including pretrial disclosure of exhibit lists, deposition designations, and jury instructions, amongst other things; preparing fact and expert witnesses to testify; and briefing many other matters including a sanctions motion, motions *in limine*, and issues related to jury instructions and verdict forms. The trial was scheduled to begin January 27, 2025. *See id.* ¶ 13(f). With well-developed views of the merits of the litigation and on the eve of trial, Kellogg Hansen and CDK negotiated a settlement without a mediator, which they executed on January 14, 2025. *See id.* ¶¶ 17-19. The Settlement Agreement is the only agreement made in connection with the proposed settlement. *See id.* ¶ 19.

- 6 -

## II.      The Proposed Settlement

The Settlement Agreement (also, the "Proposed Settlement") provides that CDK will pay $630 million in settlement consideration.  CDK will make a payment of $450 million no later than 23 days after the Court's preliminary approval of the Settlement.  *See* Ex. 1, ¶¶ 1(x), 13.  CDK will pay the remaining $180 million in three equal yearly installments of $60 million on the first, second, and third anniversary of the final approval date.  *See id.* ¶¶ 1(x), 14.  Between receipt of any settlement consideration from CDK and disbursement, the funds will be held in an interest-bearing escrow account with all interest accruing for the benefit of the Vendor Class.  *See id.* ¶¶ 13-16.  The $630 million of settlement consideration and accrued interest will be used to compensate class members and to pay litigation expenses, a class representative service award, and costs of settlement administration (including taxes), and attorney's fees (up to one-third of the net settlement consideration).  *See id.* ¶ 18.  The Proposed Settlement is not a "claims-made settlement."  *Id.* ¶ 21.  The amount of settlement consideration does not depend on the amount of claims made by class members.  *See id.* ¶¶ 18, 21.  In the event the Proposed Settlement does not receive final approval, CDK may rescind the Settlement Agreement and recoup any payments that it has made plus interest.  *See id.* ¶¶ 12, 16, 28-29.

The Settlement Agreement binds class members that were automotive software vendors located in the United States that, at any time since October 1, 2013, purchased either 3PA from CDK or RCI from Reynolds (or both) and that do not fall within any of the following exclusions: (1) CDK, Reynolds, and any of their officers, directors, employees, subsidiaries, and affiliates; (2) Cox Automotive, Inc. and its subsidiaries and affiliates; (3) Auto Rental Services LLC and its subsidiaries and affiliates, including Auto Rental Systems LLC; (4) automotive software vendors that first purchased data integration services from CDK after June 5, 2018; and (5) any federal or state governmental entities, any judicial officer presiding over this action and the members of

his/her immediate family, and judicial staff. *See id.* ¶ 1(e).[4]  These class members will release their claims against CDK, and CDK will likewise release its counterclaims asserted against AutoLoop. *See id.* ¶¶ 1(b), 1(h), 6-7.

## III.   The Proposed Distribution Plan

The Proposed Distribution Plan specifies how the settlement consideration will be distributed.  *See* Ex. 2.  The Settlement Administrator will first use any settlement consideration payments to pay any taxes (for example, due to accrued interest), any litigation expenses approved by the Court to be reimbursed to Class Counsel, the Settlement Administrator's reasonable fees and costs approved by the Court, and any service award for AutoLoop approved by the Court.  *See id.* ¶¶ 2(a)-(e), 3(a)-(d).  The Settlement Administrator will then pay Class Counsel the court-approved percentage of the remaining funds as reasonable attorney's fees.  The Settlement Administrator will then distribute the remaining funds to class members in proportion to their alleged damages, as calculated by the Vendor Class damages expert Dr. Mark Israel. *See id.* ¶¶ 2(f), 3(e).[5]  If the Settlement Administrator is unable to make any payment to a vendor within 180 days despite its best efforts, that vendor will forfeit that payment, and the payment will become settlement consideration available for distribution to the class.  *See id.* ¶ 4.  Class Counsel intend to propose that BrownGreer PLC ("BrownGreer") – which previously gave notice of class certification – serve as the Settlement Administrator.  *See* Dkt. 54, ¶ 3 (setting forth qualifications).

---

[4] Cox Automotive was excluded because it filed suit individually.  *See supra* p. 5.  Auto Rental Services LLC was excluded because it was the sole member of the certified class that elected to opt out.  *See* Dkt. 227-2.  Vendors that first purchased 3PA from CDK after June 5, 2018 were excluded because of arbitration and class-waiver clauses that CDK introduced into 3PA contracts.  *See DMS Antitrust Litig.*, 2024 WL 3509668, at *3 n.5.

[5] Although Dr. Israel calculated zero overcharges – and therefore no damages – for three vendors, those vendors will be deemed to have damages equal to the lowest non-zero damages ($198) to ensure that they receive consideration for releasing their claims.  *See* Ex. 2, ¶ 5.

In their forthcoming motion for final approval of the settlement and fee petition, Class Counsel and AutoLoop intend to seek (1) reimbursement of up to $20 million of out-of-pocket litigation expenses, including expert fees; (2) up to a $250,000 service award for AutoLoop for serving as the sole class representative; (3) reimbursement of up to $350,000 in fees and costs for the Settlement Administrator; and (4) attorney's fees of up to one-third of the settlement consideration after deducting all cost reimbursements and the service award for AutoLoop.  If Class Counsel apply for and receives the foregoing amounts, approximately $406 million will be available for distribution to class members.  Dr. Israel calculated the aggregate damages suffered by the Vendor Class to be $490 million.  Accordingly, Class Counsel estimate that each class member will receive at least ***82 percent*** of the alleged damages that Dr. Israel calculated.  The Declaration of Dr. Mark Israel incorporated into the Proposed Distribution Plan provides Dr. Israel's assessment of class members' alleged damages that was developed during litigation.  *See* Ex. 2 (incorporating Dkt. 247).  Settlement payments will be determined based on this analysis.[6]

## IV.    The Proposed Notice Plan

Class Counsel propose that BrownGreer, which was the Notice Administrator for notice of class certification, continue to serve as Notice Administrator for the Proposed Settlement and Distribution Plan.  *See* Dkt. 54, ¶ 3 (setting forth qualifications).  The Proposed Notice (Exhibit A) provides class members notice of the Proposed Settlement and Distribution Plan and includes a conservative, individualized projection of the amount that identified class members will receive under the Proposed Settlement and Distribution Plan assuming that the maximum fees, reimbursements, and awards are sought and awarded.  The Notice Administrator will provide

---

[6] Exhibit 3 sets forth the projected payment amounts for each class member – after deducting the maximum amount of fees, costs, and awards that may be sought – which will be provided to class members in individualized notices of settlement.

notice by the same means that this Court previously approved – mail and email.  *See* Brown Decl. ¶¶ 12-17; Dkt. 74, at 5 (approving class certification notice).  Because the Vendor Class has already been certified and notice was recently provided to class members with only a single vendor opting out of the Vendor Class, *see* Dkt. 226, at 2, the Proposed Notice does not provide for a second opportunity to opt out of the Vendor Class.

**ARGUMENT**

To grant preliminary approval of the Proposed Settlement and Distribution Plan, this Court must determine whether it will "likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1); *see Linman v. Marten Transp., Ltd.*, 2024 WL 2974831, at *2 (W.D. Wis. June 13, 2024).  Part I shows that both requirements of Rule 23(e)(1) are satisfied.  Part II shows that the Proposed Notice Plan provides "notice in a reasonable manner to all class members" of the proposal.  Fed. R. Civ. P. 23(e)(1)(B).  Part III proposes a schedule for final approval.

**I.    The Proposed Settlement And Distribution Plan Should Be Preliminarily Approved**

**A.    The Court Will Likely Be Able Grant Final Approval Of The Proposal**

The 2018 Amendments to Rule 23(e)(1) provide that preliminary approval may be granted upon a showing that the Proposed Settlement and Distribution Plan "likely" meet the four factors for final approval specified by Rule 23(e)(2).  Each of those factors is likely satisfied here.

**1.    AutoLoop And Class Counsel Have Adequately Represented The Vendor Class Throughout This Litigation**

The first factor – requiring that "the class representatives and class counsel have adequately represented the class," Fed. R. Civ. P. 23(e)(2)(A) – is satisfied.  Chief Judge Pallmeyer previously appointed Class Counsel and AutoLoop as class representative because it was "undisputed that AutoLoop and its counsel have adequately represented the class." *DMS Antitrust Litig.*, 2024 WL

3509668, at *10.  That decision came not at the outset of litigation but *after* AutoLoop and Class Counsel had expended tens of thousands of hours vigorously litigating this case for over six years and after they had survived all pretrial challenges to their claims and were on their way to trial in this Court.  *See supra* pp. 4-6 (recounting case history).  That decision establishes the adequacy of representation for the Vendor Class.  *See Burnett v. Conseco Life Ins. Co.*, 2020 WL 4207787, at *7 (S.D. Ind. July 22, 2020) (finding adequate representation at preliminary approval based on earlier appointment as class counsel); *see also Harvey v. Community Health Network, Inc.*, 2023 WL 3240878, at *2 (S.D. Ind. May 3, 2023) (adequate representation due to "vigorous[ ]" representation).  Class Counsel's subsequent efforts before this Court in preparing for trial and the settlement worth $140 million *more* than the Vendor Class's single alleged damages of $490 million further show that Class Counsel's representation has been far more than adequate.

### 2.    AutoLoop And Class Counsel Negotiated The Settlement Agreement With CDK At Arm's Length

The second factor – requiring a showing that the Settlement Agreement "was negotiated at arm's length," Fed. R. Civ. P. 23(e)(2)(B) – is also satisfied.  The Settlement Agreement was negotiated by sophisticated parties represented by experienced counsel at Kellogg Hansen and Kirkland & Ellis LLP.  *See* Nemelka Decl. ¶ 18.  The parties reached that agreement – the only agreement between the parties, *see* Fed. R. Civ. P. 23(e)(3) – on a solid understanding of the merits and risks of the litigation developed after years of hard-fought litigation.  *See Allegretti v. Walgreen Co.*, 2021 WL 5119759, at *1 (N.D. Ill. Nov. 1, 2021) (preliminarily approving settlement "negotiated in good faith at arm's length between experienced attorneys familiar with the legal and factual issues of this case").  The principal considerations for Class Counsel and AutoLoop in finding the agreement to be in the best interests of the Vendor Class were that the Settlement Agreement (1) ensures the Vendor Class will recover a significant percentage of their damages,

even after payment of attorney's fees and litigation costs; (2) avoids a protracted appellate process that could delay payment for years; and (3) eliminates the risk that the Vendor Class would be unable to collect a treble damage verdict.  *See* Nemelka Decl. ¶ 22; *Linman*, 2024 WL 2974831, at *2 (preliminarily approving settlement where parties described the arm's length process and considerations resulting in a settlement).

> **3.    The Vendor Class Will Receive Extraordinary Relief After The Efforts Of Class Counsel And AutoLoop Are Appropriately Compensated**

**a.**      The Court will also likely find that the third factor – whether "the relief provided for the class is adequate," Fed. R. Civ. P. 23(e)(2)(C) – is satisfied.  Indeed, here the relief is extraordinary.  The settlement, accomplished pre-verdict, is for ***130 percent*** of alleged joint-and-several damages.  Courts have readily approved class-action settlements providing for far lower recoveries.  *See*, *e.g.*, *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964-65 (9th Cir. 2009) (antitrust settlement for 30 percent of damages to release both wrongdoers was "fair and reasonable no matter how you slice it"); *In re Suboxone Antitrust Litig.*, 2024 WL 815503, at *9 (E.D. Pa. Feb. 27, 2024) (collecting cases) (antitrust settlement for 12 to 14 percent of damages to release sole wrongdoer was "well within the range of reasonableness"); *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 304-05 (S.D. Miss. Mar. 25, 2014) (class action settlement for 46.5 percent of damages to release sole wrongdoer was "very reasonable"); *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 907 (S.D. Ill. 2012) (class action settlement for 76 percent of damages to release all wrongdoers was "far greater" than usual) (citing cases); *In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 427 (S.D.N.Y. Jan. 2, 2001) (class action settlement for 26 percent of damages to release all wrongdoers was "an extremely favorable result

for the class").[7]  The parallel Dealer Class litigation against CDK – which was consolidated with the Vendor Class in the MDL – involved a similar theory of liability and settled for $100 million.  *See* MDL Dkt. 1528.  Chief Judge Pallmeyer preliminarily approved that settlement.  *See* MDL Dkt. 1531.

The "costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), reinforce the conclusion that the proposed settlement is adequate.  *First*, trial is always uncertain.  Among other things, while the Vendor Class's damages expert calculated damages to be $490 million, CDK's well-credentialed expert calculated damages to be as low as $48 million.  A jury may not have awarded full damages even if the jury found liability.  *See*, *e.g.*, *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1268 (10th Cir. 2014) (affirming jury verdict in antitrust case of $400 million where expert calculated damages to be $497 million); *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 533 (6th Cir. 2008) (antitrust verdict for $11.5 million in case with $20.9 million of damages).

*Second*, CDK likely would have exhausted all of its appellate rights in the event of a large verdict.  Post-trial briefing alone likely would take several months.  Then, the median time from notice of appeal in the Seventh Circuit to a decision is about 10 months.  *See* U.S. Courts of Appeals Judicial Business (Sept. 30, 2023), Table B-4A, https://www.uscourts.gov/data-news/data-tables/2023/09/30/judicial-business/b-4a.  This complex antitrust case likely would exceed that median time.  A likely motion for rehearing en banc and a petition for certiorari would add many more months to the process.  In total, proceeding to verdict likely would delay any recovery for

---

[7] This case is not distinguishable on the basis of the possibility of treble damages because two of the cited cases also presented that possibility.  In any event, "numerous courts have held that in determining a settlement value, the potential for treble damages should not be taken into account."  *Carnegie v. Household Int'l, Inc.*, 445 F. Supp. 2d 1032, 1035 (N.D. Ill. 2006) (citing cases); *see Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *4 n.1 (S.D. Ill. Dec. 16, 2018) (same and citing additional decisions of the Second, Third, and Ninth Circuits).

the Vendor Class by at least two to three years.  For example, Class Counsel have represented plaintiffs in two antitrust verdicts of more than $1 billion each that were affirmed on appeal.  In those cases, the petition for writ of certiorari was not denied until 43 months and 35 months after trial, respectively.  *See Urethane Antitrust Litig.*, 768 F.3d 1245 (10th Cir. 2014), *cert. dismissed*, 579 U.S. 969 (2016); *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002), *cert. denied*, 573 U.S. 1148 (2003).

*Third*, apart from the merits, and consistent with legal authority, AutoLoop appropriately considered a defendant's ability to pay a treble-damages verdict in concluding the Settlement Agreement was in the best interests of the Vendor Class.  *Chesemore v. Alliance Holdings, Inc.*, 2014 WL 12730484, at *1 (W.D. Wis. Apr. 9, 2014) (class may consider defendant's "ability . . . to pay").

**b.**      The relief provided to the Vendor Class will remain extraordinary even after deducting the full amounts that Class Counsel may seek in fees (up to one-third of the net settlement), costs (up to $20 million for Class Counsel and $350,000 for the Settlement Administrator), and a service award (up to $250,000 for AutoLoop).  *See* Fed. R. Civ. P. 23(e)(2)(C)(iii) (requiring court to consider adequacy of relief "taking into account . . . the terms of any proposed award of attorney's fees"); *Groshek v. Great Lakes Higher Educ. Corp.*, 2016 WL 4690318, at *4 (W.D. Wis. Apr. 13, 2016) (adequacy of relief to be assessed after deducting fees and costs).  Here, class members will receive at least ***82 percent*** of their individual alleged damages even if the full amounts are sought and awarded.

If preliminary approval is granted, Class Counsel, AutoLoop, and the Settlement Administrator will, on the same date as the motion for final approval, file a separate motion for an award of attorney's fees, reimbursement of expenses, and Settlement Administrator fees and costs.

- 14 -

For purposes of this motion, the Court can grant preliminary approval if it is likely that the requests are reasonable. *See Linman*, 2024 WL 2974831, at *4 (granting preliminary approval where "proposed attorney fees appear reasonable").

For fees, the Court must "do [its] best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Broiler Chicken Antitrust Litig.*, 80 F.4th 797, 801 (7th Cir. 2023) (quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)). Here, the one-third contingency fee that Class Counsel may seek is the market rate for complex antitrust litigation. Judge Durkin recently compiled statistics regarding fee awards for 49 recent antitrust settlements between $100 million and $1 billion to determine the market rate. *See In re Broiler Chicken Antitrust Litig.*, 2024 WL 3292794, at *4-5 (N.D. Ill. July 3, 2024), *appeal pending*, No. 24-2387 (7th Cir. filed Aug. 9, 2024). Of the 49 awards Judge Durkin surveyed, the most common percentage awarded – slightly less than half of all awards – was one-third. *See id.* at *5; *see, e.g., Corzo v. Brown Univ.*, 2024 WL 3506498, at *6-7 (N.D. Ill. July 20, 2024) (approving one-third fee from $284 million antitrust settlement as "within the ordinary range of contingency fee arrangements actually negotiated *ex ante* between parties and awarded, in complex antitrust actions").

A one-third contingency fee of approximately $203 million also would satisfy any lodestar cross-check that this Court might choose to apply. *See Linman*, 2024 WL 2974831, at *4; Standard Attachments for Civil Cases Assigned to Judge Peterson at 39, https://www.wiwd.uscourts.gov/sites/default/files/Attachments_PTC_JDP.pdf. Class Counsel have not conducted a definitive review of their time records, but their conservative estimate of lodestar fees at current rates totals more than $40 million. *See* Nemelka Decl. ¶ 15; *Mathur v. Board of Trs. of S. Ill. Univ.*, 317 F.3d 738, 745 (7th Cir. 2003) (holding current rates were "proper

rates to use when calculating the lodestar amount"). Accordingly, Class Counsel expect any fee request to be approximately five times its lodestar or less, which is within the range of reasonable lodestar multipliers, especially in light of the extraordinary risk taken by Class Counsel and the unprecedented results achieved for the Vendor Class. *See Domann v. Summit Credit Union*, 2020 WL 1847868, at *2 (W.D. Wis. Apr. 13, 2020) ("courts have approved multipliers of five or more"); *see*, *e.g.*, *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 2015 WL 13546111, at *6 (W.D. Wis. Jan. 5, 2015) (noting that multiplier of 5.85 has been approved as reasonable) (citing *Williams v. Rohm & Haas Pension Plan*, 2010 WL 4723725 (S.D. Ind. Nov. 12, 2010), *aff'd*, 658 F.3d 629 (7th Cir. 2011)).

For costs, Class Counsel are ordinarily reimbursed for their out-of-pocket litigation expenses. *See* Fed. R. Civ. P. 23(h) (allowing "nontaxable costs"). The $20 million amount that Class Counsel may seek equals just over three percent of the total settlement consideration, which is reasonable in light of the complexity, duration, and magnitude of this litigation and reflects efficient litigation by Class Counsel in comparison to other cases. *See*, *e.g.*, *Greenville*, 904 F. Supp. 2d at 905-06, 911 (approving $8.57 million of expenses for class action settlement of $105 million); *Glaberson v. Comcast Corp.*, 2015 WL 5582251, at *1, 16 (E.D. Pa. Sept. 22, 2015) (approving $8.57 million of expenses for an antitrust settlement of $50 million). The Settlement Administrator may also seek reimbursement of its fees and costs up to $350,000, which is a reasonable amount for the services to be rendered. *See*, *e.g.*, *In re Suboxone Antitrust Litig.*, 2023 WL 8437034, at *19 (E.D. Pa. Dec. 4, 2023) (approving $1.4 million of administrator expenses).

For AutoLoop's service award, the reasonableness of the request will be determined by "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in

pursuing the litigation." *Ackley v. Marathon Cheese Corp.*, 2024 WL 4006212, at \*5 (W.D. Wis. Aug. 30, 2024) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). An award of $250,000 is justified because the extraordinary result achieved in this case would not have been possible without AutoLoop. AutoLoop could have pursued its substantial damages claim individually, but instead, AutoLoop took the additional burden of being the sole class representative, bore sole responsibility for overseeing the litigation, and shouldered the heaviest burden of any vendor during discovery – producing tens of thousands of documents (over three discovery periods) and putting its employees up for seven depositions. An award of $250,000 is modest for the service that AutoLoop provided to the Vendor Class – especially in light of the outcome – and compares favorably to awards in other cases involving significantly smaller recoveries. *See, e.g.*, *Marchbanks Truck Serv., Inc. v. Comdata Network, Inc.*, 2014 WL 12738907, at \*1, 4 (E.D. Pa. July 14, 2014) (total awards of $300,000 to three class representatives in $130 million settlement); *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5158730, at \*17 (N.D. Cal. Sept. 2, 2015) (total awards of $540,000 to five class representatives in $415 million settlement); *Velez v. Novartis Pharms. Corp.*, 2010 WL 4877852, at \*4, 8, 28 (S.D.N.Y. Nov. 30, 2010) (total awards of $3,775,000 to 26 class representatives in $152 million settlement); *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at \*6, 14-16 (N.D. Cal. June 5, 2017) (total awards of $300,000 to three class representatives in $50 million settlement).

### 4.    The Proposed Distribution Plan Treats Class Members Equitably

The fourth factor likely will be satisfied because the Proposed Distribution Plan "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The guiding principle behind the Proposed Distribution Plan is that class members will be compensated based on their proportionate share of the alleged damages, as calculated by the Vendor Class's expert. The damages amounts at issue were determined during the litigation by Dr. Mark Israel – one of the

nation's preeminent antitrust experts.  His expert opinion allocated damages to 243 class members and is the principal basis for the distribution of the settlement proceeds.  *See* Dkt. 246, at tbl. 2 (Israel Report); Dkt. 247 (Israel Declaration for Proposed Distribution Plan).  Dr. Israel's damages opinions have already been tested twice in (unsuccessful) *Daubert* motions.  *See DMS Antitrust Litig.*, 2024 WL 3509668, at *3-8; *DMS Antitrust Litig.*, 581 F. Supp. 3d at 1050-57.  And, if this case had proceeded to trial, those damages opinions would have been the basis provided to the jury for awarding damages to the Vendor Class.  Those opinions provide an appropriate basis for equitable distribution of the settlement.

### B.    The Proposed Settlement Applies To The Already-Certified Class

Rule 23(e)(1) also requires a "showing that the court will likely be able to . . . certify the class."  Fed. R. Civ. P. 23(e)(1)(B)(ii).  Here, the Vendor Class has already been certified as:

> All automotive software vendors (i.e., persons or entities engaged in the sale of software solutions to automotive dealerships) located in the United States that, at any time since October 1, 2013, have purchased data integration services from CDK or Reynolds.  Excluded from the class are (1) CDK, Reynolds, and any of their officers, directors, employees, subsidiaries, and affiliates; (2) Cox Automotive, Inc. and its subsidiaries and affiliates; and (3) automotive software vendors that first purchased data integration services from CDK after June 5, 2018; (4) any federal, state governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

*DMS Antitrust Litig.*, 2024 WL 3509668, at *18 (citation omitted).  The Proposed Settlement applies to this same class, minus the single vendor that opted out of the certified class.  *See* Ex. 1, ¶ 1(e).  The claims being settled are also the same claims for which class certification was previously granted.  Rule 23(e)(1) is thus satisfied.  *See* 2018 Advisory Committee Note to Rule 23(e) ("If the court has already certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted.").

## II.    The Proposed Notice Plan Should Be Approved

The Court should approve the Proposed Notice Plan because it satisfies Rule 23(e)(1)'s requirement of providing "notice in a reasonable manner to all class members" who would be bound by the Proposed Settlement and Distribution Plan.   Fed. R. Civ. P. 23(e)(1)(B).   The Proposed Notice Plan uses the same means of providing notice that this Court previously approved for purposes of providing notice of class certification.   *See* Dkt. 74, at 5 (approving class notice plan in Dkt. 53).   The Notice Administrator – which Class Counsel propose to remain BrownGreer – again will provide notice by using direct contact information (mailing addresses and email addresses) obtained from CDK and Reynolds (because class members were customers of CDK and Reynolds) and will also use additional contact information developed through the Notice Administrator's own research.   *See* Brown Decl. ¶ 13.   Using this method of notice, the Notice Administrator previously provided individual notice of class certification to 222 of 243 identified class members (91.4 percent), which collectively accounted for 99.2 percent of the damages suffered by the Vendor Class.   *See* Dkt. 226, at 1-2.   The Notice Administrator has continued to research the 21 small or defunct vendors that it was not able to reach previously and now expects to be able to reach the vast majority – if not all – of them with individual mail or email notice, *see* Brown Decl. ¶ 13, which is "the best notice practicable," *Blihovde v. St. Croix Cnty.*, 2003 WL 23200374, at *1 (W.D. Wis. Apr. 25, 2003).[8]

The notice provided to class members (Exhibit A) will also clearly explain the Proposed Settlement and Distribution Plan to each class member and their right to object.   Specifically, the

---

[8] At class certification, the Notice Administrator provided notice to all 439 vendors for which Dr. Israel had calculated damages in his initial class certification report, prior to amendment of the class definition that narrowed class membership to 244 vendors (now 243 after one opt out). *See* Dkt. 226, at 1-2.   The MDL court certified that narrower class, and the Notice Administrator now will provide notice only to the 243 vendors that are members of the certified class.   *See* Brown Decl. ¶ 13.

notice states the projected amount that each class member will receive if the maximum amount of fees, expenses, and awards are sought and approved, *see* Ex. A, at 1-2, and describes the nature of the action, *see id.* at 3 (Question 3), the terms of the Proposed Settlement, *see id.* at 5 (Question 8), the Proposed Distribution Plan, *see id.* at 5-6 (Question 9), the attorney's fees and reimbursements that are being sought, *see id.*, how to receive payment, *see id.* at 6 (Question 10), and how to raise any objections to the proposal, *see id.* at 6-8 (Questions 12 to 15).  *See In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 351 (N.D. Ill. Aug. 11, 2010) ("The contents of a Rule 23(e) notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing.") (quoting 3 Newberg on Class Actions § 8:32 (4th ed. 2010)).

The Proposed Settlement does not afford a second opt-out opportunity for class members, and this Court should not condition settlement approval on that opportunity.  *See* Fed. R. Civ. P. 23(e)(4); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006) (decision whether to condition settlement approval on a second exclusion opportunity is "confided to the court's discretion").  Granting a second opt-out period is "unusual," *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018), and is "intended to be applied sparingly," *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 345 (S.D.N.Y. 2005), *aff'd in relevant part*, 443 F.3d 253, 270-71 (2d Cir. 2006).  Here, the Vendor Class consists of businesses that were given individual notice of class certification on October 3, 2024, and had an ample period (until November 18, 2024) to opt out.  *See* Dkt. 227, ¶ 11.  "Since notice of class certification was issued and the deadline to opt out expired, there have been no material changes, e.g., in the information available to the classes, that would warrant a second opportunity to opt out."  *In re HIV Antitrust Litig.*, 2023 WL 11897610, at

*2 (N.D. Cal. Sept. 25, 2023). Rather, all vendors that opted to remain in the class "would have been bound by the outcome of the trial that was scheduled to begin shortly after the parties reached settlement; so too, they are bound by the settlement, if approved." *Sjunde AP-Fonden v. General Elec. Co.*, 2025 WL 89271, at *2 (S.D.N.Y. Jan. 14, 2025) (declining second opt-out period).

Providing for a second opt-out period here would merely delay final approval of the Proposed Settlement and thus delay of the substantial payments due to the class members. It also "would impede the settlement process so favored in the law," *Low*, 881 F.3d at 1121, by encouraging opportunistic behavior where "dissatisfied or mercenary counsel to woo class members away from the settlement with promises of a superior alternative settlement award." 2 McLaughlin on Class Actions § 6:21 (21st ed. 2024); *cf. In re Brand Name Prescription Drugs Antitrust Litig.*, 1996 WL 167347, at *4 (N.D. Ill. Apr. 4, 1996) ("Neither Rule 23 nor due process requires that the objectors now be afforded a second opportunity to opt out simply because they now oppose settlements which did not exist at the time the original Notice of Class Determination was disseminated.").

## III. The Court Should Adopt The Proposed Schedule

Upon preliminary approval, AutoLoop proposes the following deadlines for final approval of the Proposed Settlement and Distribution Plan:

| EVENT | DEADLINE |
|---|---|
| Notice issued to class members | 14 days after preliminary approval |
| Last day for CDK to file with the Court proof of CAFA compliance | 28 days after preliminary approval |
| Deadline for the motions for final approval and for attorney's fees, other reimbursements, and a service award | 45 days after preliminary approval |
| Deadline for objections to the Proposed Settlement and Distribution Plan and to the motions for attorney's fees, other reimbursements, and a service award | 75 days after preliminary approval |
| Deadline for Class Counsel to file replies to any objections | 90 days after preliminary approval |
| Final approval and fairness hearing | To Be Determined |

The proposed schedule will facilitate expeditious distribution of the first $450 million settlement payment while also providing class members with a reasonable period to review the Proposed Settlement and Distribution Plan, as well as the motion for final approval and motions for attorney's fees, expenses, and service award, and lodge any objections thereto.

## CONCLUSION

The Court should preliminarily approve the Proposed Settlement and Distribution Plan, direct the Notice Administrator to issue notice of the same to the Vendor Class pursuant to the Proposed Notice Plan, and enter the proposed schedule for final approval.

Dated:  January 27, 2025                    Respectfully submitted,

_/s/ Michael N. Nemelka_
Michael N. Nemelka
Derek T. Ho
Aaron M. Panner
Daniel V. Dorris
Collin R. White
Bethan R. Jones
Ana N. Paul
Matthew J. Wilkins
Daren G. Zhang
Kaleb J. LeGore
**KELLOGG, HANSEN, TODD,**
   **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
Fax: (202) 326-7999
Email: mnemelka@kellogghansen.com
dho@kellogghansen.com
apanner@kellogghansen.com
ddorris@kellogghansen.com
cwhite@kellogghansen.com
bjones@kellogghansen.com
apaul@kellogghansen.com
mwilkins@kellogghansen.com
dzhang@kellogghansen.com
klegore@kellogghansen.com

Jennifer L. Gregor
**GODFREY & KAHN, S.C.**
One East Main Street, Suite 500
Madison, WI 53703
Phone: 608-257-3911
Fax: 608-257-0609
Email: jgregor@gklaw.com

Samuel Issacharoff
40 Washington Square South
New York, NY 10012
Phone: (212) 998-6580
Email: si13@nyu.edu

_Counsel for Plaintiff Loop, LLC, d/b/a AutoLoop, on_
_behalf of itself and the Vendor Class_

- 23 -