# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| **LOOP LLC D/B/A AUTOLOOP, on behalf of itself and all others similarly situated**, <br><br> **Plaintiff,** <br><br> **v.** <br><br> **CDK GLOBAL, LLC,** <br><br> **Defendant.** | Case No. 3:24-cv-00571-jdp <br><br> Honorable James D. Peterson |

**SETTLEMENT AGREEMENT BETWEEN THE VENDOR CLASS AND CDK**

This Settlement Agreement ("Agreement")[1] is made and entered into on January 13, 2024 by and between the Vendor Class Plaintiff LOOP, LLC ("Plaintiff"), both individually and on behalf of the Vendor Class, and CDK Global, LLC ("CDK"), through their respective counsel. This Agreement is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Vendor Released Claims and the CDK Released Claims, upon and subject to the terms and conditions set forth in this Agreement and subject to the approval of the Court.

WHEREAS, Plaintiff is prosecuting the Vendor Class Action ("Action") on its own behalf and on behalf of the Vendor Class against CDK; and

WHEREAS, Plaintiff has alleged, among other things, that CDK and The Reynolds and Reynolds Company ("Reynolds") unlawfully colluded to restrain and/or eliminate competition by charging supracompetitive prices in the markets for Data Integration Services ("DIS"), in violation of Sections 1 and 2 of the Sherman Act and certain state antitrust and consumer protection laws; and

---

[1] Unless otherwise noted, capitalized terms not immediately defined have the meanings set forth in the Definitions section of this Agreement.

1

WHEREAS, Plaintiff has conducted an investigation into the facts and the law regarding the Action and has concluded that a settlement with CDK according to the terms of this Agreement is fair, reasonable, and adequate, and beneficial to and in the best interests of Plaintiff and the Vendor Class; and

WHEREAS, CDK denies Plaintiff's allegations and claims in the Action and any wrongdoing or liability to Plaintiff and members of the Vendor Class; and is entering into this Agreement for settlement purposes only and solely to avoid the inconvenience, distraction, and disruption of burdensome litigation and to reach certain and final resolution with CDK's customers, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims known or unknown against CDK based on the allegations in the Action, as more particularly set out below; and

WHEREAS, Plaintiff denies any allegations and counterclaims brought by CDK in the Action and denies any wrongdoing or liability to CDK; and is entering into this Agreement for settlement purposes only and to avoid the further expense, risk, inconvenience, distraction, and disruption of burdensome litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims known or unknown against it and members of the Vendor Class, as more particularly set out below; and

WHEREAS, Class Counsel and CDK's Counsel have engaged in arm's-length settlement negotiations;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to CDK and, except as provided by this Agreement, without costs to Plaintiff, the Vendor Class, or CDK,

subject to the approval of the Court, following notice to the Vendor Class, on the following terms and conditions:

### A.    Definitions

1.    These terms, as used in this Agreement, have the following meanings:

(a)    "Action" means The Vendor Class Action captioned *Loop, LLC, d/b/a Autoloop, on behalf of itself and all others similarly situated v. CDK Global, LLC*, Case No. 3:24-cv-00571-jdp (W.D. Wis.).

(b)    "CDK Released Claims" means any and all claims and causes of action (whether class, representative, individual, or otherwise), existing as of or prior to the Effective Date, whether asserted or unasserted, known or unknown, suspected or unsuspected, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, that CDK Releasors have against Vendor Class Members that arise out of or relate to the facts, agreements, conspiracies, communications, or announcements alleged in the Amended Complaint – Class Action, filed in the action captioned *Loop, LLC, d/b/a AutoLoop v. CDK Global, LLC*, Case No. 18 C 2521 (N.D. Ill.), MDL No. 2817 (filed June 5, 2018) (the "Amended Complaint") and CDK's Counterclaims.

(c)    "CDK Releasees" and "CDK Releasors" mean CDK, and all of their respective current and former, direct and indirect parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, assigns, insurers, and shareholders; and all respective current and former officers, directors, principals, partners, members, heirs, attorneys, representatives, agents, and employees of each of the foregoing entities.

(d)    "Counsel for CDK" refers to the law firm of Kirkland & Ellis LLP.

(e)    "Vendor Class," for purposes of settlement only, means: All automotive software vendors (i.e., persons or entities engaged in the sale of software solutions to automotive dealerships) located in the United States that, at any time since October 1, 2013, have

purchased data integration services from CDK or The Reynolds and Reynolds Company ("Reynolds"). Excluded from the class are (1) CDK, Reynolds, and any of their officers, directors, employees, subsidiaries, and affiliates; (2) Cox Automotive, Inc. and its subsidiaries and affiliates; (3) Auto Rental Services LLC and its subsidiaries and affiliates, including Auto Rental Systems LLC; (4) automotive software vendors that first purchased data integration services from CDK after June 5, 2018; and (5) any federal, state governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

(f)     "Class Counsel" means the law firm of Kellogg, Hansen, Todd, Figel & Frederick P.L.L.C, Godfrey & Kahn, S.C., and Professor Samuel Issacharoff.

(g)     "Vendor Class Member" means each member of the Vendor Class.

(h)     "Vendor Released Claims" means any and all claims and causes of action (whether class, representative, individual, or otherwise), existing as of or prior to the Effective Date, whether asserted or unasserted, known or unknown, suspected or unsuspected, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, that Vendor Class members ("Vendor Class Releasors") have against CDK Releasees (i) asserted by Plaintiffs in the Amended Complaint and in this Action, or (ii) that arise out of or relate to the facts, agreements, conspiracies, communications, or announcements alleged in the Amended Complaint under any antitrust, unjust enrichment, unfair competition, unfair practices, trade practices, price discrimination, unitary pricing, racketeering, contract, civil conspiracy or consumer protection law, whether under federal, state, local or foreign law, including claims for damages (whether actual, punitive, treble, compensatory, or otherwise), costs, fees, expenses, penalties, and attorneys' fees.

(i)      "Defendant" means CDK.

(j)      "DIS" or "Data Integration Services," for purposes of this Agreement only, means the programs and services for extracting, formatting, integrating, and/or organizing data from DMSs.

(k)      "DMS," for purposes of this Agreement only, means Dealer Management System, which is an enterprise software system and computing platform designed for automobile dealers.

(l)      "Effective Date" shall mean the Execution Date of this Agreement.

(m)      "Escrow Account" means the separate escrow account at a banking institution into which the Settlement Consideration will be deposited for the benefit of the Vendor Class.

(n)      "Escrow Agent" means the Settlement Administrator.

(o)      "Execution Date" means the date of the last signature on the signature pages set forth below. On the Execution Date, the Plaintiff and CDK are bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with their Rescission Rights.

(p)      "Fee and Expense Order" means an order by the Court approving the request for an award of attorneys' fees and litigation expenses and class representative awards.

(q)      "Final," with respect to the Final Approval Order and Judgment or an alternative judgment, means: (a) if no appeal is filed, the expiration date of the time for filing or noticing of any appeal from the Court's Judgment approving the Settlement; i.e., thirty (30) calendar days after entry of the Judgment; or (b) if there is an appeal, the date of final dismissal of any appeal from the Judgment, or the final dismissal of any proceeding on *certiorari* to review the

Judgment; or (c) the date of final affirmance on an appeal of the Judgment, the expiration of the time to file a petition for a writ of *certiorari*, or the denial of a writ of *certiorari* to review the Judgment, and, if *certiorari* is granted, the date of final affirmance of the Judgment following review under that grant. It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. §1651, shall be taken into account in determining the above-stated times. Any proceeding or order, or any appeal or petition for a writ of *certiorari* pertaining solely to any distribution plan and/or application for attorneys' fees, class representative service awards, costs, or expenses, shall not delay or preclude the Judgment from becoming Final.

(r)     "Final Approval Order and Judgment" means the order and final judgment to be entered by the Court approving the Agreement.

(s)     "Notice" means the forms of notice as approved by the Settling Parties and submitted with the Motion for Preliminary Approval, including the email and mail, and long form notices, and information release to be disseminated by the Settlement Administrator to the Vendor Class.

(t)      "Preliminary Approval Order" means the proposed order preliminarily approving the Agreement and directing notice of the settlement to the Vendor Class.

(u)     "Released Claims" means the Vendor Released Claims and the CDK Released Claims.

(v)     "Settlement" means the settlement contemplated by this Agreement.

(w)     "Settlement Administrator" means the firm of BrownGreer PLC, which shall administer the Settlement, subject to the Court's approval.

(x)     "Settlement Consideration" means six hundred thirty million dollars ($630,000,000) in U.S. dollars. CDK will pay the Settlement Consideration in four installments –

an Initial Settlement Payment of $450 million and three later Installment Payments of $60 million each, as described in detail below.

   (y) "Settlement Fund" means the funds in the Escrow Account, and any interest accrued thereon.

   (z) "Settling Parties" means the Vendor Class Members and CDK.

  **B.** **Approval of this Agreement, Notice, and Dismissal of Claims Against CDK**

   2. <u>Best Efforts to Effectuate this Settlement</u>. Plaintiff and CDK will use their best efforts to effectuate this Agreement, including cooperating in seeking Court approval of the Settlement to secure the complete and Final dismissal with prejudice of the Action as to CDK. The parties shall use their best efforts to stay litigation of the Released Claims of Vendor Class Members pending the Final Approval Order and Judgment.

   3. <u>Motion for Preliminary Approval</u>. On January 27, 2025, Class Counsel will submit a motion for preliminary approval of the Settlement by the Court and for authorization to disseminate Notice of the settlement to the Vendor Class. CDK and Plaintiff agree that the terms of this Settlement will remain confidential until it is filed with the motion for preliminary approval, except to the extent necessary to effectuate the terms of the Settlement or as required by law.

   4. <u>Notice to the Vendor Class</u>. Notice of the Settlement shall be disseminated to the Vendor Class, which shall be provided the opportunity to object to the Settlement, or any attorneys' fees, costs, and expenses, or class representative service award sought by Class Counsel. On the timetable and in the manner set by the Court in the Preliminary Approval Order, the Settlement Administrator shall disseminate notice to the Vendor Class.

   5. <u>Motion for Final Approval and Entry of Final Judgment</u>. Prior to the date set by the Court to consider whether this Settlement should be finally approved, Class Counsel

will submit a motion for final approval of the Settlement by the Court. The Settling Parties shall jointly seek entry of a Final Approval Order and Judgment.

### C.       Releases, Discharge, and Covenants Not to Sue

6.       Release of Claims Against CDK Releasees. Upon entry of the Final Approval Order and Judgment, Vendor Class Releasors release Vendor Released Claims against each CDK Releasee, irrespective of whether any such claim has been asserted against such releasee.

7.       Release of Claims Against Vendor Class Members. Upon entry of the Final Approval Order and Judgment, CDK Releasors release CDK Released Claims against each member of the Vendor Class, irrespective of whether any such claim has been asserted against such releasee.

8.       No Future Actions Following Releases. Vendor Class Releasors and CDK Releasors covenant and agree that they will not, after the Effective Date, seek to recover from any releasee on account of the claims released by such releasors.

9.       Covenant Not to Sue. Vendor Class Releasors and CDK Releasors hereby covenant not to sue CDK Releasees and members of the Vendor Class, respectively, with respect to any Released Claims. Vendor Class Releasors and CDK Releasors shall be permanently barred and enjoined from instituting, commencing, or prosecuting against the CDK Releasees and members of the Vendor Class, respectively, any claims based on the Released Claims. The Settling Parties contemplate and agree that this Agreement may be pleaded as a bar to a lawsuit, and an injunction may be obtained, preventing any action from being initiated or maintained in any case sought to be prosecuted by or on behalf of any Vendor Class Releasor or CDK Releasor with respect to the Released Claims.

10.    <u>Waiver of California Civil Code § 1542 and Similar Laws</u>. Vendor Class Releasors and CDK Releasors expressly waive, upon Final Approval of the Agreement, any and all provisions, rights and benefits conferred by (i) Section 1542 of the California Civil Code, which provides, "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party"; or (ii) any law of any state or territory of the United States, or principle of common law that is similar, or equivalent to Section 1542 of the California Civil Code.

**D.    Motion Practice**

11.    With the exception of any motions regarding approval and enforcement of this Settlement, neither CDK nor Plaintiff shall file any further motions against the other and shall use their best efforts to stay any further litigation of the Action after the Effective Date pending Final Approval. In the event this Settlement does not become Final, both CDK and Plaintiff shall retain the right to reinstate and pursue any motions that were previously stayed or taken off calendar.

**E.    Payments**

12.    <u>Settlement Consideration</u>. CDK shall pay or cause to be paid the Settlement Consideration. CDK's sole monetary obligation under the settlement shall be for CDK to pay the Settlement Consideration, and CDK shall not be obligated to pay any other amounts. Class Counsel will establish an Escrow Account. Any Settlement Consideration paid into the Escrow Account shall be returned to CDK, with any interest earned thereon, if the settlement does not become final.

13. <u>Initial Settlement Payment</u>. CDK shall fund $450 million of the Settlement Consideration into the Escrow Account no later than twenty-three (23) days after the Court's preliminary approval of the settlement ("Initial Settlement Payment").

14. <u>Installment Payments</u>. The remaining $180 million of Settlement Consideration shall be paid by CDK in three equal installments of $60 million into the Escrow Account on the first, second, and third anniversary of the final approval date (the "Installment Payments"). If any of these payments are not timely made, Plaintiff may seek specific performance of this provision in the Western District of Wisconsin after providing notice to CDK of any breach and 14 days to cure.

15. In addition, if CDK fails to timely make any of the Installment Payments, CDK will pay compounding interest on any overdue payments (the Initial Settlement Payment or any Installment Payment) at a rate of 10% per month, but only after Class Counsel provides CDK with notice of any such failure and 10 days to cure without penalty.

16. All interest on the funds in the Escrow Account shall accrue to the benefit of the Vendor Class. There shall be no disbursements from the Escrow Account unless and until the Court grants final approval of the settlement.

**F.    Settlement Fund**

17. <u>Settlement Fund</u>. Class Counsel will provide complete and accurate payment instructions and W-9s for the Initial Settlement Payment and Installment Payments (combined "Settlement Consideration") into the Escrow Account.

(a) <u>Escrow Account</u>. All funds required to be held in escrow for the purposes of this Settlement shall be held by the Escrow Agent. All funds required to be held in the Escrow Account are deemed to be in the custody of the Court and will remain subject to the

10

jurisdiction of the Court until the funds are distributed pursuant to this Agreement and/or further order of the Court.

(b)     The Escrow Agent or any independent entity designated by the Escrow Agent will invest any funds held in the Escrow Account in short-term United States Agency or Treasury Securities (or a mutual fund invested solely in such instruments) or in a fully U.S. Government-insured account, and will collect and reinvest any interest accrued thereon, except that any residual cash balances or funds needed for short-term placement up to the amount that is insured by the FDIC may be deposited in any account that is fully insured by the FDIC and held in cash.

(c)     All risks related to the investment of the Settlement Fund shall be borne solely by the Settlement Fund, and the CDK Releasees shall have no responsibility for, interest in, or liability regarding investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent.

(d)     The Settling Parties and their counsel shall treat, and shall cause the Settlement Administrator or its designee to treat, the Settlement Fund as at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. In addition, the Settlement Administrator or its designee and, as required, the parties, shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1(j)(2)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements in such regulations. It shall be the responsibility of the Escrow Agent, the Settlement Administrator or its designee to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur. All provisions of this Agreement

11

shall be interpreted consistent with the Settlement Fund being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

(e)     For the purpose of § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Settlement Fund shall be the Escrow Agent, the Settlement Administrator or its designee, who shall timely and properly file or cause to be filed, all tax returns necessary or advisable regarding the Settlement Fund (including, without limitation, all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2).

(f)     The Escrow Agent or its designee will file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Fund.

(g)     The Escrow Agent or any independent entity designated by the Escrow Agent will pay out of the Settlement Fund: (i) all taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon CDK with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for federal or state income tax purposes ("Taxes"); and (ii) all expenses and costs incurred in connection with the operation and implementation of this Paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Paragraph ("Tax Expenses").

(h)     CDK Releasees shall have no liability or responsibility for the Taxes or the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered, a cost

of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (and any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)). The Settling Parties, through their counsel, agree to cooperate with each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

### G.    Administration and Distribution of Net Settlement Fund

18.    <u>Net Settlement Fund</u>. The Settlement Fund, net of any Taxes and Tax Expenses, shall be used to pay any attorneys' fees, litigation expenses, class representative service awards, and costs of administering this Settlement approved by the Court. The balance of the Settlement Fund after the above payments shall be the "Net Settlement Fund." Vendor Class Releasors shall look solely to the Net Settlement Fund for settlement and satisfaction against the CDK Releasees of all Released Claims and shall have no other recovery against CDK or any other CDK Releasee for such Released Claims.

19.    <u>Distribution of Net Settlement Fund</u>. Upon further orders of the Court, the Settlement Administrator, subject to such supervision and direction of the Court and/or Class Counsel as may be necessary or as circumstances may require, will distribute the Net Settlement Fund to Vendor Class Members pursuant to a distribution plan to be approved by the Court. Class Counsel, either before or after final settlement approval, shall propose to the Court a reasonable distribution plan for the Net Settlement Fund designed to effectuate the Settlement. In no event shall any CDK Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the costs and expenses of such distribution and administration. CDK shall be dismissed

13

from the Action prior to any distribution of this Net Settlement Fund and shall have no involvement in the distribution of the Net Settlement Fund.

20.     Distribution Plan. A distribution plan is not a necessary term of this Agreement, and it is not a condition of this Agreement that any particular distribution plan be approved. A distribution plan will be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement in this Agreement, and any order or proceedings relating to any distribution plan shall not operate to terminate or cancel this Agreement or affect the finality of the Final Approval Order and Judgment, or any other orders entered pursuant to this Agreement. The time to appeal from an approval of the Settlement shall commence upon the Court's entry of the Final Approval Order and Judgment or an alternative judgment, regardless of whether either any distribution plan or application for attorneys' fees and expenses has been submitted to the Court or approved.

21.     No Reversion. This is not a claims-made settlement. The Net Settlement Fund shall be distributed to Vendor Class Members pursuant to a Court-approved distribution plan or as otherwise ordered by the Court. CDK shall not be entitled to the return of any of the settlement monies except as set forth in the Status Quo Ante Paragraph below.

**H.     Class Counsel's Attorneys' Fees, Class Representative Service Awards, and Reimbursement of Expenses**

22.     Fee and Expense Application. Subject to Court approval, Class Counsel may apply to the Court for an award of fees, reimbursement of expenses, and class representative service awards; provided, however, that (i) any fees, expenses, and service awards approved by the Court in respect of this Settlement shall be paid solely out of the Settlement Consideration and CDK shall have no other liability for payment of any such fees and expenses and service awards, and (ii) CDK agrees not to take any position on any application of Class

14

Counsel for such fees, expenses, and service awards so long as the attorney fee award does not exceed one-third of all settlement monies collected on behalf of the Vendor Class in the Action, plus interest thereon.

23.      The CDK Releasees shall not have any liability for any costs, fees, or expenses of any of Plaintiff's or the Vendor Class's respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees and expenses as approved by the Court shall be paid out of the Settlement Fund.

24.      <u>Payment of a Fee and Expense Award</u>. Upon entry of an order by the Court approving the request for an award of attorneys' fees and litigation expenses and class representative award ("Fee and Expense Order"), attorneys' fees and litigation expenses and any class representative award may be paid from the Settlement Fund pursuant to the terms of the Fee and Expense Order, subject to Class Counsel's obligations to make appropriate refunds or repayments to the Settlement Fund plus accrued interest at the same net rate as earned by the Settlement Fund, if, because of any appeal and/or further proceedings on remand, or successful collateral attack, the Settlement is terminated or the Fee and Expense Order is modified or reversed.

25.      Class Counsel shall receive attorneys' fees, costs, expenses, and funds for any class representative service award when such Fee and Expense Order is signed by the district court, regardless of whether approval of the Settlement or the Fee and Expense Order is appealed. Class Counsel shall refund any award under the Fee and Expense Order to the extent that it is reversed or reduced by an appellate court.

26.         CDK has no liability or obligation to Plaintiff, the other Vendor Class Members, or Class Counsel for any type of attorneys' fees or service award other than CDK's obligation to pay or cause to be paid the Settlement Consideration.

27.         <u>Award of Fees, Class Representative Service Awards and Expenses Not Part of Settlement</u>. The procedure for and the allowance or disallowance by the Court of any fee and expense application are not part of the Settlement, and are separate from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceeding relating to any fee and expense application, including without limitation an award of attorneys' fees or expenses less than the amount requested by Class Counsel, or any appeal from or reversal or modification of any order relating to attorneys' fees or expenses, shall not operate to terminate this Agreement, or affect or delay the finality of the Judgment approving the Settlement, including, but not limited to, the release, discharge, and relinquishment of the Released Claims against the CDK Releasees, or any other orders entered pursuant to the Settlement. Neither CDK nor any CDK Releasee shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Class Counsel of any fee or expense award in the Action. Plaintiff and Class Counsel have no right to terminate this Settlement based on the Court's or any appellate court's ruling regarding fees and expenses or class representative awards.

I.      **Settling Parties' Rescission Rights**

28.         CDK and Plaintiff may each elect to terminate the Settlement and this Agreement ("Rescission Rights") by providing written notice to the other party within thirty (30) days after any of the following events: (a) the Court's declining to enter the Preliminary Approval Order in any material respect; (b) the Court's refusal to approve this Agreement or any material part of it; (c) the Court's declining to enter the Final Approval Order and Judgment in any material respect; (d) the date upon which the Final Approval Order and Judgment is modified or reversed

16

in any material respect by the Court of Appeals or the Supreme Court; or (e) the date upon which an alternative judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court.

**J.      Effect of Termination, Rescission, or Failure to Become Final**

29.      <u>Status Quo Ante</u>. Except as otherwise provided in this Agreement, if the Settlement is terminated, rescinded, or otherwise does not become Final, then the following provisions ("Status Quo Ante Provisions") shall be applicable: (i) the Settling Parties shall be deemed to have reverted to their respective status in the Action as of January 11, 2025; (ii) except as otherwise provided, the Settling Parties shall proceed as if this Agreement and any related orders had not been entered; (iii) this Agreement will be inadmissible for any purpose; (iv) within fourteen (14) calendar days of termination or rescission of this Agreement or failure of this Agreement to become Final, any amount of the Settlement Consideration that CDK paid into the Escrow Account shall be returned to CDK, with any interest earned thereon, less any paid or accrued taxes; (v) CDK reserves the right to seek full recovery of all Taxes and Tax Expenses paid prior to the termination, rescission, or failure of this Agreement to become Final, as the case may be; and (vi) Plaintiff and CDK expressly reserve all of their respective claims, rights, and defenses.

**K.      No Admission of Wrongdoing**

30.      Plaintiff and CDK agree this Agreement, whether or not it shall become Final, and any negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by CDK or Plaintiff or of the truth of the claims or allegations in any complaint or any other pleading filed in the Action, and evidence thereof shall not be discoverable or used directly or indirectly in the Action or in any other action or proceeding. Neither this Agreement, nor any of its terms and provisions, nor the negotiations or proceedings connected with it, nor any

other action taken to carry out this Agreement by any of the Settling Parties shall be referred to, offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or proceedings, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law.

**L.    Miscellaneous Provisions**

31.    Notwithstanding anything contained herein to the contrary, this Agreement does not affect, release, or alter any contractual obligation between CDK and any Vendor Class Member including (i) for CDK, any obligation to provide products or services to any Vendor Class Member, and (ii) for the Vendor Class Member, any obligation to pay for those products or services

32.    For the avoidance of doubt, the Agreement shall not constitute a final and complete resolution of all disputes asserted or which could be asserted with respect to the Released Claims, until each of the following conditions has been satisfied: final approval of the settlement by the Court, and entry of the Final Approval Order and Judgment in the form agreed to by the parties, with such approval becoming final after the resolution of objections and any appeal or through the absence of any further right of appeal (if any).

33.    <u>Solvency Warranty</u>. CDK warrants that, as to the payments to be made by and/or on behalf of it, at the time that such payment was made or caused to be made pursuant to this Agreement, it was not insolvent, nor did the payment required to be made by or on behalf of it render it insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code, including §§ 101 and 547 thereof. This warranty is made by CDK and not by its counsel.

34.    All unpaid amounts of the Settlement Consideration (i.e., an unpaid Initial Settlement Payment or unpaid Installment Payments) shall become immediately due and

payable upon CDK (i) commencing a voluntary case under any federal, state, or foreign bankruptcy examinership, insolvency, receivership, or similar law now or hereafter in effect, or (ii) consenting to the entry of an order for relief in an involuntary case, or to the conversion of an involuntary case to a voluntary case, under any such law.

35.     If a case is commenced with respect to CDK (or any insurer contributing funds to the Settlement Fund on behalf of it) under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver, conservator, or other fiduciary is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by or on behalf of CDK to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited to the Settlement Fund by others, then, at the election of Class Counsel, the Settling Parties shall jointly move the Court to vacate and set aside the releases given and Judgment entered in favor of CDK pursuant to this Agreement, which releases and Judgment shall be null and void, and the Settling Parties shall be restored to their respective positions in the Action as of January 11, 2025, and any cash amounts in the Settlement Fund shall be returned as provided by this Agreement.

36.     Final and Complete Resolution; Rule 11 Compliance; Voluntary Settlement. The Settling Parties intend the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted with respect to the Released Claims. Accordingly, Plaintiff and CDK agree not to assert in any forum that the litigation was brought, litigated, or settled by the Plaintiff or CDK, or defended by CDK or the Plaintiff in bad faith or without a reasonable basis. The Settling Parties will assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, or any similar rules or statutes relating to the

19

prosecution, defense, or settlement of the Action. Each of the Settling Parties represents that it negotiated this Settlement Agreement in good faith and at arm's length, and the Settling Parties agree that the Settlement was reached voluntarily and after consultation with experienced legal counsel.

37. <u>Amendment; Waiver</u>. This Agreement may not be modified or amended, except by a writing signed by or on behalf of all Settling Parties or their successors-in-interest. The provisions of this Agreement may be waived only by an instrument in writing executed by the waiving party. The waiver by any Settling Parties of any breach of this Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

38. <u>Retention of Exclusive Jurisdiction; Resolution of Disputes; Choice of Law</u>. The United States District Court for the Western District of Wisconsin shall retain exclusive jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute between the Settling Parties arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiff and CDK. This Agreement shall be governed by and interpreted according to the substantive laws of the State of Wisconsin without regard to its choice of law or conflict of laws principles.

39. <u>Integrated Agreement</u>. This Agreement supersedes any and all prior and contemporaneous agreements and undertakings of Plaintiff and CDK in connection with this Settlement. This Agreement may be modified or amended only by a writing executed by Plaintiff and CDK, through their respective counsel, and approved by the Court.

40.      <u>Binding Effect</u>. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of, Plaintiff, the Vendor Class Members, and CDK. Without limiting the generality of the foregoing: (a) every covenant and agreement made in this Agreement by Plaintiff shall be binding upon all Vendor Class Releasors; and (b) every covenant and agreement made by CDK shall be binding upon all CDK Releasors. Members of the Vendor Class and the CDK Releasees (other than the Plaintiff and CDK, who are parties to this Agreement) are third party beneficiaries of this Agreement and may enforce its terms applicable to them. With the exception of the members of the Vendor Class and the CDK Releasees, there are no other third-party beneficiaries of any provision of this Agreement, including without limitation the Releases set forth herein. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than the Vendor Class Releasors, members of the Vendor Class, CDK Releasors, and CDK Releasees any right or remedy under or from this Agreement. For clarity, Reynolds is not a third-party beneficiary of this Agreement, and nothing contained herein shall affect or release any claim against Reynolds, or alter any contractual obligation between Reynolds and any other person.

41.      <u>Execution in Counterparts</u>. This Agreement may be executed in counterparts by Class Counsel and CDK's Counsel, and an electronically-scanned (in either .pdf or .tiff format) signature will be considered as an original signature for purposes of execution of this Agreement.

42.      <u>Headings</u>. The headings in this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

43.         <u>No Party Deemed to be the Drafter</u>. Neither Plaintiff nor CDK is considered the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

44.         <u>No Tax Advice</u>. No opinion or advice concerning the tax consequences of the proposed Settlement to individual Vendor Class Members is being given or will be given by Class Counsel or CDK's Counsel; nor is any representation or warranty made by this Agreement. Each Vendor Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Vendor Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Vendor Class Member.

45.         <u>Changes of Address</u>. Either Settling Party may change the address for notice delivery by giving notice in the manner set forth in this Agreement.

46.         <u>Authorization to Enter into this Agreement</u>. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

47.         <u>Notice to Settling Parties Under This Agreement</u>. Where this Agreement requires either Settling Party to provide notice or any other communication or document to the other Settling Party, this notice, communication, or document must be in writing and provided by email or letter by overnight delivery to the party being notified as follows:

For the Plaintiff and
Vendor Class:

Michael N. Nemelka
**KELLOGG, HANSEN, TODD,**
  **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
Email:mnemelka@kellogghansen.com

For Settling Defendant CDK:

Craig S. Primis, P.C.
Katherine Katz, P.C.
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave., NW
Washington, D.C. 20004
Tel: (202) 389-5000
craig.primis@kirkland.com
katherine.katz@kirkland.com

Cam Williams
CDK Global LLC
1950 Hassell Road
Hoffman Estates, IL 60169
Cam.Williams@cdk.com

Ryan Szainwald
Kristen Haase
Brookfield Capital Partners LLC
250 Vesey Street, 15th Floor
New York, New York 10281
ryan.szainwald@brookfield.com
Kristen.haase@brookfield.com

DATED: January 14, 2025

Michael N. Nemelka
Derek T. Ho
Aaron M. Panner
Daniel V. Dorris
Collin R. White
Bethan R. Jones
Ana N. Paul
Matthew J. Wilkins
Daren G. Zhang
Kaleb J. LeGore
**KELLOGG, HANSEN, TODD,**
   **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
Email:mnemelka@kellogghansen.com
         dho@kellogghansen.com
         apanner@kellogghansen.com
         ddorris@kellogghansen.com
         cwhite@kellogghansen.com
         bjones@kellogghansen.com
         apaul@kellogghansen.com
         mwilkins@kellogghansen.com
         dzhang@kellogghansen.com
         klegore@kellogghansen.com


Jennifer L. Gregor
**GODFREY & KAHN, S.C.**
One East Main Street, Suite 500
Madison, WI 53703
Phone: 608-257-3911
Email: jgregor@gklaw.com

Samuel Issacharoff
40 Washington Square South
New York, NY 10012
Phone: (212) 998-6580
Email: si13@nyu.edu

***Counsel for Plaintiff Loop, LLC, d/b/a AutoLoop, on
behalf of itself and the Vendor Class***

24

DATED: January 14, 2025

*Katherine Katz*

Mark Filip, P.C.
Kevin M. Jonke
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
Tel: (312) 862-2000
mark.filip@kirkland.com
kevin.jonke@kirkland.com

Craig S. Primis, P.C.
Katherine Katz, P.C.
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave., NW
Washington, D.C. 20004
Tel: (202) 389-5000
craig.primis@kirkland.com
matt.reilly@kirkland.com
winn.allen@kirkland.com
katherine.katz@kirkland.com

***Counsel for Defendant CDK Global, LLC***