IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LOOP LLC d/b/a AUTOLOOP, on behalf of itself and
all others similarly situated,

                Plaintiff,                          OPINION and ORDER

    v.

                                                          24-cv-571-jdp

CDK GLOBAL, LLC,

                Defendant.

---

In this certified class action, plaintiff Loop LLC contends that defendant CDK Global, LLC violated antitrust law by conspiring with its competitor The Reynolds and Reynolds Company to unreasonably restrain trade in the market for data-integration services, leading to higher prices. Two weeks before trial was scheduled to begin, the parties notified the court that they had reached a settlement. Dkt. 244. The parties now move for preliminary approval of their settlement under Federal Rule of Civil Procedure 23(e)(1)(b). Dkt. 248. For the reasons below, the court will grant the motion but also identify potential issues for concern that should be addressed in a motion for final approval.

ANALYSIS

A court may grant preliminary approval of a settlement if the court "will likely be able to" find that the settlement is "fair, reasonable, and adequate" after a hearing. Fed. R. Civ. P. 23(e)(1)(B) and (e)(2). The court must consider several factors, including the adequacy of relief to the class, the relative fairness of the settlement for each class member, and the reasonableness of the attorney fees. *Id.*

The settlement agreement provides that CDK will pay a total of $630 million, which will be divided up as follows:

- $20 million for class counsel's legal expenses
- $350,000 for the administrator's expenses
- $250,000 for Loop's service award
- One-third of the remaining amount, or $203,133,133, for attorney fees.
- Two-thirds of the remaining amount, or $406,266,667, to be distributed to the 243 class members

The settlement will be paid in four installments, over three years. The first payment of $450 million will be made shortly after the settlement is finally approved. Taxes, legal expenses, administrative expenses, the named plaintiff's service award, and attorney fees will be paid first, and the remainder will be paid to the class. CDK will make additional payments of $60 million each year for three years. Any amount that goes unpaid to a class member will be redistributed to other class members in accordance with their pro-rata share; no portion of the settlement fund will revert to CDK.

By any measure, this is a large settlement, one of the largest ever in this district. Loop's expert calculates class damages at approximately $490 million, Dkt. 247, and the class will get about 82 percent of that, or an average of nearly $2 million per class member. If the class prevailed at trial, they could have recovered treble damages. *See* 15 U.S.C. § 15(a). But there is no guarantee that the class would have prevailed at trial, or, if it did, that the jury would have agreed with Loop's damages calculations. (CDK's damages calculations were as low as $48 million.) Trial would also have increased expenses substantially. So it is reasonable that the

case settled for a significant fraction of the maximum. The parties cite several cases suggesting that their settlement is within the range of reasonableness. *See* Dkt. 248, at 18–19.

The parties also appear to have apportioned settlement shares in a straightforward and equitable manner. Specifically, each class member's pro-rata share was calculated based on the volume of purchases that class members made of CDK and Reynolds's data-integration services.

The court does have concerns on several issues: (1) the request for attorney fees; (2) the request for litigation expenses; (3) the request for administrative expenses; (4) the service award; (5) the structure of the settlement; and (6) the claims process. The court will explain each of these concerns and then provide guidance on the how the parties should address these concerns in the motion for final approval.

**Attorney fees**. Class counsel seek more than $200 million in fees. This represents one-third of the total settlement after expenses are subtracted, and approximately five times what Loop represents its lodestar is.

At this point, the parties have not made a robust case for justifying such a large amount of fees. When, as in this case, attorney fees are deducted from class damages, "the district court must try to assign fees that mimic a hypothetical ex ante bargain between the class and its attorneys." *Williams v. Rohm and Haas Pension Plan*, 658 F.3d 629, 635–36 (7th Cir. 2011). The court may consider "actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Id.*

In this case, class counsel did not provide evidence of other fee contracts or class-counsel auctions. Instead, class counsel rely primarily on *In re Broiler Chicken Antitrust Litigation*, No. 16 C 8837, 2024 WL 3292794 (N.D. Ill. Jul. 7, 2024) (Durkin, J.), to show that their fees are

3

reasonable. In that case, the court approved a fee award of $51,660,000, which was 30 percent of the settlement fund after deducting the expenses and incentive awards. *Id.* at *6. The court relied mostly on a review of fees approved in other antitrust cases involving settlements of more than $100 million and less than $1 billion. *Id.* at *4–5.

The persuasive value of *Broiler Chicken* is uncertain for three reasons. First, it is not clear whether the other antitrust settlements cited in the opinion are representative. The court did not explain how it generated the list. Second, the court declined to credit much evidence suggestive of a lower rate, including empirical studies (observing fee awards of between 12 and 25.4 percent in class actions), bids in class-counsel auctions (between 13.5 and 20 percent), previous contracts of class counsel (26.6 percent), and numerous awards in other cases that the court believed were not representative of the market rate (as low as nine percent). *Id.* at *2–6. Third, an appeal is pending in *Broiler Chicken*, and the court of appeals had previously vacated the district court's slightly higher fee award of 33 percent for failing to adequately consider much of the same evidence the district court again concluded was not persuasive after the remand. *See In re Broiler Chicken Antitrust Litigation*, 80 F.4th 797 (7th Cir. 2023). So it remains to be seen how the court of appeals will decide the current appeal. But even if this court followed *Broiler Chicken*, that court awarded 30 percent of a $180 million settlement, not one-third of a $600 million settlement.

Class counsel also point to the settlement approved for the dealer class in the Northern District of Illinois, which awarded one-third of a $100 million settlement to class counsel. Dkt. 252-1. But that settlement also provides limited guidance, for two reasons. First, class counsel do not point to any reasoning the court provided for approving the attorney fees to

4

counsel for the dealer class. Second, the court awarded $29.5 million, which is a small fraction of the fees that class counsel are seeking in this case.

It is true that courts commonly approve fees that represent one-third of the total, after expenses are subtracted. *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 782–83 (7th Cir. 2014). But this is not an ordinary case. When a settlement is as large as the one in this case, it raises questions about whether a standard percentage-of-recovery analysis should apply. For example, in *In re Spectrum Brands Securities Litigation*, this court approved attorney fees that represented 15 percent of the total settlement fund $32 million, less expenses. No. 19-cv-347-jdp (W.D. Wis. Mar. 21, 2022). One treatise cites various studies showing that the average fee award in antitrust class actions ranges from 22 to 27 percent. 5 *Newburg and Rubenstein on Class Actions* § 15.83 (6th ed. 2022). A study cited by *Broiler Chicken* reported a median attorney fee award of 26 percent for settlements between $500 million and $1 billion in antitrust cases. Center for Litigation and Court, UC Law SF, "2022 Antitrust Annual Report: Class Actions in Federal Court" 32 (Sept. 2023). The same study observed that, "[g]enerally speaking, the larger the class settlement recovery by category, the higher the median percentage the class retained, the lower the median percentage awarded in attorney's fees." *Id.* at 31.

In *Silverman v. Motorola Sols., Inc.*, the court observed that "[a]n award fixed at 27.5% of a $200 million fund is exceptionally high," and that it had previously approved a tiered approach in cases with a large settlement fund, so the attorney fee percentage decreases as the settlement amount increases. 739 F.3d 956, 958–59 (7th Cir. 2013). This type of structure "enables [class counsel] to recover the principal costs of litigation from the first bands of the award, while allowing the clients to reap more of the benefit at the margin (yet still preserving some incentive for lawyers to strive for these higher awards)." *Id.* In the example the court

5

cited, the award was 30 percent of the first $10 million, 25 percent of the next $10 million, 22 percent of the band from $20 to $46 million, and 15 percent of everything else. *Id.*; *see also Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (approving attorney fees representing 36 percent of the first $10 million, 30 percent of the next $10 million, and 24 percent of the remaining $34 million). The parties in this case do not say whether they considered such an approach, and, if so, why they rejected it.

A large percentage of recovery can be appropriate when it is necessary to ensure that class counsel receive adequate compensation for the risk they accepted. But the proposed lodestar multiplier in this case is also exceptionally high. Class counsel did not provide billing records, but they represent their lodestar is "more than $40 million." Dkt. 248, at 21. If that is accurate, it means that class counsel's fee request would result in a lodestar multiplier of five. Class counsel identify no other case in which this court approved such a large multiplier. They cite *Williams v. Rohm & Haas Pension* Plan, No. 04-0078-SEB, 2010 WL 4723725 (S.D. Ind. Nov. 12, 2010), which approved a multiplier of 5.85, but the percentage of recovery requested in that case was 24 percent, and the awarded fees totaled $43.5 million, significantly less than what class counsel are requesting.

Class counsel say that a high lodestar multiplier is appropriate for the risk they incurred in taking this case. Specifically, they say that the case was particularly risky because there were no other lawsuits or criminal investigations when Kellogg Hansen filed *MVSC v. CDK Global, Inc.*, No. 17-896 (C.D. Cal. filed Feb. 3, 2017), *Authenticom, Inc. v. CDK Global, LLC*, No. 17-318 (W.D. Wis. filed May 1, 2017), and *Cox Automotive, Inc. v. CDK Global, LLC*, No. 17-925 (W.D. Wis. filed Dec. 11, 2017). But those cases against CDK all settled years ago, *see In Re: Dealer Management Systems Antitrust Litigation*, No. 18-cv-864 (N.D. Ill.), Dkt. 723, Dkt. 778,

6

Dkt, 1199, so presumably class counsel have already received compensation for the risk they took for those earlier cases. This case was filed later, in April 2018.

Class counsel do not explain why it is appropriate to evaluate attorney fees based on risks for other lawsuits. They also provide no reason other than the lack of previous lawsuits for believing the case was especially risky, especially after the case proceeded past major hurdles, such as summary judgment and class certification. Some authorities suggest that significantly more than half of antitrust cases are resolved through settlement. *See* Theodore Eisenberg & Charlotte Lanver, *What is the Settlement Rate and Why Should We Care?* 6 Journal of Empirical Legal Studies 111, 123 n.40 (2009) (estimating that 75 to 80 percent of antitrust cases are settled); John M. Connor & Robert H. Lande, *Not Treble Damages: Cartel Recoveries Are Mostly Less Than Single Damages*, 100 Iowa L. Rev 1997, 1999 n.2 (1998) (estimating that between 70 and 88 percent of antitrust cases are settled). Class counsel do not identify any reasons to believe that settlement was less likely in this case.

In any event, "attorneys' fees don't ride an escalator called risk into the financial stratosphere." *Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014). In *Harman v. Lyphomed, Inc.*, the court observed that "[m]ultipliers anywhere between one and four . . . have been approved," but a multiplier of four is "quite rare." 945 F.2d 969, 976 (7th Cir. 1991). This suggests that class counsel's fee request is outside the norm. Class counsel rely on *Corzo v. Brown University* to support an argument that awarding one-third of the settlement fund to class counsel is reasonable, even when the settlement is large (in *Corzo*, the settlement was $284 million). No. 22-cv-125, 2024 WL 3506498, at *7 (N.D. Ill. Jul. 20, 2024). But the lodestar multiplier in that case was 1.35, a fact the court relied on when approving the award. So *Corzo* is not helpful.

7

**Class counsel expenses**. Class counsel seek $20 million in expenses. But counsel provide little basis for assessing the reasonableness of those expenses. In a supplement to their motion, class counsel point to the settlement approved for the dealer class, which awarded $7.2 million in expenses for a $100 million settlement. Class counsel say that award is proportionate to the expenses requested in this case. Dkt. 252-1. That provides one data point, but the court will need more information before approving the requested amount.

**Administrative expenses**. Class counsel seek $350,000 for administrative expenses. Again, class counsel provided little basis for assessing the reasonableness of that request. (The settlement for the dealer class does not appear to separate administrative expenses from class counsel expenses.)

**Service award**. Class counsel ask the court to approve a $250,000 service award for Loop. This is many multiples of the service award that this court usually approves, which is between $1,000 and $10,000. *See Ackley v. Marathon Cheese Corporation*, No. 22-cv-232-jdp, slip op., at 9–10 (W.D. Wis. Aug. 30, 2025), Dkt. 30. Plaintiffs point to the service awards approved in the dealer class settlement, which add up to $230,000. Dkt. 252-1. But there were 23 class representatives in the dealer class, so each received only $10,000. All of the other cases class counsel cite with similarly large awards also involved multiple class representatives, each of whom received significantly less than what class counsel is proposing in this case. In the last multimillion dollar class settlement in this court, the court approved service awards of less than $8,000 to two class representatives. *See Spectrum*, No. 19-cv-374-jdp, Dkt.123, at 2.

Loop's status as the sole class representative may support a larger-than-usual award if Loop was providing more-than-usual assistance to class counsel. The amount of the service award is determined by factors such as "the actions the plaintiff has taken to protect the

8

interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). The court may also consider the risks the class representative incurred and the amount that is necessary to induce a class member to serve as the class representative. *Id.* Loop did not submit a declaration describing the efforts it made on behalf of the class. In their brief, class counsel say that Loop "produc[ed] tens of thousands of documents," and its employees sat for seven depositions. Dkt. 248, at 23. Class counsel do not explain why that level of assistance justifies such a large award.

**Structure of the settlement**. The parties' settlement agreement requires Loop to make four payments. Specifically, CDK will pay $450 million immediately after settlement approval and then will make $60 million payments each year for three years. Dkt. 249-1, ¶¶ 13–14. The parties do not explain how the extended implementation of the settlement affects the final resolution of this case. The parties include a paragraph in their agreement stating that the court will retain jurisdiction "over the implementation, enforcement, and performance" of the settlement agreement. *Id.*, ¶ 38. But it would be unusual for this court to retain jurisdiction over a case for three years, and the general rule is that the court cannot both retain jurisdiction and dismiss the case with prejudice, unless the terms of the settlement are incorporated into a judgment. *See Blue Cross & Blue Shield Ass'n v. Am. Express Co.*, 467 F.3d 634, 636–37 (7th Cir. 2006). The parties do not say whether they intend to request that the court hold the case open for three years, to incorporate their agreement into a judgment, or to do something else.

**Claims process**. The parties have already calculated each class member's pro-rata share, Dkt. 247, so class members will not have to submit a claim to receive their shares of the settlement. But the proposed distribution plan states that class members will not receive

9

payment unless they: (1) "adequately verify[] their identity"; (2) "submit a complete IRS Form W-9"; and (3) "provid[e] valid payment instructions." Dkt. 249-2, ¶ 2.f. These requirements raise questions about what qualifies as "adequate[]" identity verification and "valid" payment instructions, and, if there is a dispute about whether a class member's information is "adequate" or "valid," how that dispute will be resolved.

     Despite all of these concerns, the court will grant preliminary approval of the settlement. All of the class members in this case are businesses, and the average recovery for each class member is approximately $2 million. More than a dozen class members' shares are calculated at more than $10 million. It is reasonable to infer that many class members are sophisticated businesses that have the incentive and resources to carefully review the settlement and raise objections to any portion of it that they believe is unfair. Other courts have considered the class members' size and sophistication when considering the level of scrutiny to give a proposed settlement because sophisticated businesses are more capable than the typical class member of protecting their own interests. *See, e.g.*, *In re Dairy Farmers of America, Inc.*, 80 F. Supp. 3d 838, 847 (N.D. Ill. 2015); *Standard Iron Works v. ArcelorMittal*, No. 09 C 5124, 2014 WL 7781572, at *2 (N.D. Ill. Oct. 22, 2014); *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 338 (E.D. Pa. 2007); *In re Remeron Direct Purchaser Antitrust Litigation*, No. Civ. 03–0085, 2005 WL 3008808, at *6 (D.N.J. Nov. 9, 2005).

     So the court is willing to withhold judgment at the preliminary stage and allow the class members to weigh in before determining whether final settlement approval is appropriate. But the court has laid out its concerns to flag them for both the parties and the class members. In light of the above concerns, the court will provide guidance on what it expects the parties to include in their motion for final approval.

As for attorney fees, class counsel must explain why such a large percentage of recovery and a large lodestar multiplier is reasonable under the circumstances of this case, taking care to address each of the points the court has raised in this opinion about the fee request. If class counsel cannot make a persuasive argument, they should reduce their fee request.

The fee petition must comply with the court's procedures on fee petitions, which are included on page 39 of the attachments to Docket 74. Class counsel should review those procedures carefully. If class counsel's lodestar calculation includes any time spent on *MVSC*, *Authenticom*, or *Cox*, counsel should explain why that is reasonable.

As for expenses, class counsel must provide records of their litigation expenses, along with an explanation of why the expenses are reasonable. Counsel need not go line by line through their expense logs, but counsel should provide enough detail so that the court can meaningfully assess the reasonableness of the expenses. The same standard applies to the administrator's expenses. The administrator should also provide a declaration identifying those expenses and demonstrating their reasonableness.

As for the $250,000 service award, class counsel must provide additional support, using the factors outlined in *Cook*, 142 F.3d 1004, as a guide. The evidence submitted should include a declaration from a Loop representative or class counsel, describing in reasonable detail the assistance Loop provided in the lawsuit and providing any other information that is relevant to assessing the reasonableness of the service award. Again, class counsel must address all the concerns the court raised about the service award in this order. If they cannot do that, they should reduce the requested award.

As for the structure of the settlement, the parties must explain how they believe the case should proceed if the settlement is finally approved, addressing the following issues:

(1) whether they want the court to keep the case open until the final payment is made, and, if so, why it is necessary and appropriate to do that; (2) whether they want the court to enter judgment after finally approving the settlement, and, if so, whether that is consistent with the parties' request for the court to retain jurisdiction. The parties must submit a proposed order with the motion for final approval, along with any proposed judgment they want the court to enter.

As for the claims process, the parties must identify more specifically how class members will verify their identities and provide payment instructions and how disputes about identity, payment, or tax forms will be resolved.

This opinion, the motion for final approval, and all supporting documents must be uploaded to the class settlement website. The settlement notice must inform the class of the following: (1) that the parties will be filing a motion for final approval of the settlement that will be available on the website; (2) the date the motion will be available on the website; and (3) that the court's order granting preliminary approval available is available on the website. This information must be clearly and prominently displayed, both in the class notice and the class settlement website. The court will set a schedule leading up to the fairness hearing so that the class members have adequate time to raise objections after the motion for final approval is filed.

ORDER

IT IS ORDERED that:

1. The parties' motion for preliminary approval of their class settlement agreement, Dkt. 248, is GRANTED.

2. The parties may have until May 13, 2025, to issue notice to the class members, in accordance with this opinion.

3. CDK may have until May 27, 2025, to file proof that it has complied with the notice requirements in 28 U.S.C. § 1715(b).

4. The parties may have until June 10, 2025, to file a motion for final approval of the settlement.

5. The deadline for class members to object to the settlement is July 15, 2025.

6. The parties may have until July 29, 2025, to file a reply to any objections.

7. The court will hold a settlement approval hearing on August 29, 2025, at 2:00 pm in Courtroom 260.

Entered April 29, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge