**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

---

LOOP, LLC, D/B/A AUTOLOOP, on behalf of
itself and all others similarly situated,

        Plaintiff,

    v.

CDK GLOBAL, LLC,

        Defendant.           Case No. 3:24-cv-00571-jdp

---

**DECLARATION OF SAMUEL ISSACHAROFF**

---

SAMUEL ISSACHAROFF declares based on personal knowledge as follows:

**PURPOSE OF DECLARATION**

1.        As I will set forth below, I am a law professor at New York University School of Law. I submit this declaration in my capacity as coordinating counsel to the Plaintiffs' Steering Committee in the MDL and as one of the appointed Interim Class Counsel in the case now before this Court. I have been involved in this case since February of 2018, having been brought in to assist Mr. Derek T. Ho and Mr. Michael N. Nemelka strategize the complicated interactions between the MDL consolidated before Judge St. Eve, the competing class actions, and the resolution of individual cases. Two months later, that role was formalized by the MDL court with my appointment as coordinating counsel, a role necessitated by the division of claims and leadership between a vendor group led by Mr. Ho and a dealer group led by Ms. Wedgworth.

2.          All of my work in this case has been on the MDL issues and the preparation of the vendor class to go to trial, and now settle.  As set forth below, my role focused on the procedural issues involved in the case, including the difficult questions of trial in light of potential conflicts between direct and indirect purchasers.  (I use the customary antitrust shorthand, even though the underlying economic structure of the auto data market complicated the relations more so than in the typical wholesaler-retailer market division).  At all times, Mr. Ho and Mr. Nemelka, and their partners and associates, led the substantive prosecution of this case.  My role on the substantive issues of the antitrust claims was only to review and advise as to the potential implications for advancing the collective prosecution of the claims.  I submit this Declaration in support final approval of the vendor class settlement and in support of the requested fee award and expense allowance.

## CREDENTIALS AND BACKGROUND

3.          I am the Reiss Professor of Constitutional Law at New York University School of Law, a faculty that I joined about 20 years ago.  Previously I was the Harold J. Medina Professor in Procedural Jurisprudence at Columbia Law School, where I was a member of the faculty from 1999 to 2005.  Before that I spent ten years as a professor of law at the University of Texas School of Law, where I held the Joseph D. Jamail Centennial Chair in Law.

4.          In my scholarship and teaching I specialize in complex litigation.  I have published many articles on various aspects of complex litigation, including matters such as class actions and attorneys' fees, which have been cited by numerous courts, including the United States Supreme Court.  I routinely teach and lecture on matters of complex litigation in the United States and abroad.  One of my regular academic courses is complex litigation, which I teach with my NYU colleague Arthur Miller.

5.        I have also been involved as counsel, as an expert and as a consultant in a large number of complex cases, including dozens of class actions, on behalf of both plaintiffs and defendants. In addition, I have served as special master in a mass tort class action in the Eastern District of Texas.  I have testified before the Advisory Committee on the Rules of Practice and Procedure of The Judicial Conference of the United States and the Third Circuit Task Force on the Selection of Class Counsel regarding proposed amendments to the federal class action rule and other matters pertaining to the selection and compensation of class counsel. I have also submitted *amicus curiae* briefs on class action issues, including attorneys' fees, to the Supreme Courts of Texas and the United States.  I served as Reporter for the Project on Aggregate Litigation of the American Law Institute, which unanimously approved its proposed final report 15 years ago.  This work was published in 2010 as Principles of the Law of Aggregate Litigation.   I have provided a copy of my curriculum vitae as an attachment to this submission.

6.        Of particular significance for this case, and the reason I believe that Mr. Ho originally contacted me, is that at the time of my entry into this matter, I had served a similar role in at least three of the largest and most significant MDL/class action matters in the federal courts. In the NFL Concussion Litigation, the VW emissions litigation, and the Deepwater Horizon litigation, I was brought in to advise the plaintiffs' leadership on matters pertaining to the litigation of multiple complex cases, assist in the negotiation and structuring of the settlement of the cases primarily through a class action, and then to defend the settlement on various appeals. *See, e.g., In re Deepwater Horizon,* 785 F.3d 986, 989 (5th Cir. 2015) ("*Deepwater Horizon II*"); *In re NFL Concussion Litigation*, 821 F.3d 410 (3d Cir. 2016); *In re Volkswagen "Clean Diesel" Mktg. Litig.*, 914 F.3d 623 (9th Cir. 2019).

## WORK IN THE CASE

7.     I began working on this case in 2018.  From the beginning, it appeared that this would be a difficult antitrust case.  First, there was no preceding government enforcement action, almost a precondition to the overwhelming majority of private antitrust matters.  Second, the was a swelter of claims against Reynolds and CDK acting as monopolists, conspiring as monopolists, entering into an anticompetitive merger, and under an array of private contracts, some of which had arbitration clauses and some of which did not.  The market was unusually segmented because CDK and Reynolds not only controlled data access critical to the vendors, but were at various stages market competitors with the vendors.  As a result, the dealers were sometimes indirect purchasers from the vendors, but at other times direct purchasers from Reynolds or CDK.  There was a high risk that damages models would create conflict between dealers and vendors and that, if the cases were to be tried together, that could be exploited by Reynolds and CDK.  Further, the cases had been consolidated for pretrial proceedings in the Northern District of Illinois, which meant that under *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26 (1998), the cases would have to be returned to the forum of origin if class certification was only partial.

8.     Of these, the most significant in my view was the lack of prior governmental enforcement action.  This had two effects.  First, it made the proof of the claims more difficult, particularly on the questions of intent.  Second, it made it likely that any successful prosecution of the case would take a long time, something that was borne out here.  In getting involved in the case, I was cognizant that the case would likely take a great deal of time and would be difficult to try.  It was critical that I would be working with Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen"), which had litigated *the* exemplary complicated antitrust case

through successful trial and appeal. *See In re Urethane Antitrust Litig.*, 768 F.3d 1245 (10th Cir. 2014). While that case represents the gold standard of such private litigation, it also took eight years from start to finish.

9. As this Court is well aware, this case was on track to outstrip *Urethane* in terms of duration and perhaps complexity. It ultimately settled only on the eve of a scheduled trial after extensive litigation of all pretrial issues and after full preparation for trial itself. The other moving papers document the difficulties, risks, and time taken in trial preparation and I will not repeat that here.

10. As mentioned, all of my time in this case was spent on MDL/class action matters. My contemporaneous records show that I spent a total of 343.35 hours on the case between 2018 and present. My current hourly billing rate for clients retaining me on an hourly basis is $1,600 per hour. At my current rates, my lodestar in this case is $549,360.00. I do not include any hours spent on preparing the fee application or this declaration in the lodestar.

11. In addition, I have carried my own litigation expenses which consist of travel to and from Chicago for various court appearances. My carried litigation expenses are $10,153.13.

## FEE REQUEST

12. I have read the submissions in support of final approval and an award of attorneys' fees, including the declarations of counsel and expert material. I agree and endorse all of it and note that it best represents the "mimic the market" approach of the Seventh Circuit. As the Circuit stated in one of many such cases, "courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Taubenfeld v.*

*AON Corp.,* 415 F.3d 597, 599 (7th Cir. 2005) (citations omitted).  I would note that at the time I decided to enter this case, Kellogg Hansen had already been privately retained by sophisticated business entities to pursue this matter with contingent fee arrangements that ranged from 30 to 40 percent.

13.      Not only is that level of award justified, in my view, by the outstanding results in the case, but it is consistent with the positions I have long taken on the question of how to compensate counsel in class actions.  This issue was addressed in the ALI's Principles of Aggregate Litigation, for which I served as the primary Reporter.

14.      The Principles of Aggregate Litigation begin with the idea that fees are not an entitlement for work performed but for results obtained.  In § 3.13, the Principles set forth: "Attorneys' fees in class actions, whether by litigated judgment or by settlement, should be based on both the actual value of the judgment or settlement to the class . . ."

15.      I declare the foregoing is based on information known to me and that it is true and accurate to the best of my knowledge, subject to the laws against perjury pursuant to 28 U.S.C. § 1746.

_____
Samuel Issacharoff

Dated: June 10, 2025