IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LOOP LLC d/b/a AUTOLOOP, on behalf of itself and
all others similarly situated,

                               Plaintiff,                          OPINION and ORDER

    v.

                                                                     24-cv-571-jdp

CDK GLOBAL, LLC,

                               Defendant.

---

In this certified class action, plaintiff Loop LLC sued CDK Global, LLC for antitrust violations, alleging that CDK and its competitor The Reynolds and Reynolds Company agreed to unreasonably restrain trade in the market for automotive dealer manager systems. Two weeks before the case was scheduled for trial, the parties announced a proposed settlement of $630 million. During a hearing, the court approved most aspects of the agreement but reserved a ruling on the issue of attorney fees. Class counsel ask for $205,730,587, which is one-third of the settlement after expenses and Loop's service award are subtracted.

There is no question that class counsel obtained excellent results for the class and they are entitled to substantial compensation for the risk they incurred when taking this case and for the years of effort spent in litigation. But the court must still evaluate the fee request for reasonableness and fairness to the class and try to determine what the market rate would have been at the outset of litigation. For the reasons below, the court will approve $185,157,529, which is 30 percent of the settlement after expenses and the service award are subtracted. That amount better reflects both what the parties themselves believed the market rate was at the beginning of the case and what is commonly awarded in class actions of this type and size. This modest adjustment still leaves class counsel with ample compensation for excellent work.

ANALYSIS

Under Federal Rule of Civil Procedure 23(h), the court may award reasonable attorney fees to class counsel. The court must consider any fee request in light of what a "fair, reasonable, and adequate" settlement is for the class. Fed. R. Civ. P. 23(e)(2). In making that determination, the court tries "to approximate the fee that the parties would have agreed to at the outset of the litigation without the benefit of hindsight." *In re Stericycle Sec. Litig.*, 35 F.4th 555, 559–60 (7th Cir. 2022). This hypothetical market rate should reflect "the risk of nonpayment and the normal rate of compensation in the market at the time." *Id.* (internal quotation marks omitted). Relevant evidence of the market rate includes "actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Williams v. Rohm and Haas Pension Plan*, 658 F.3d 629, 635–36 (7th Cir. 2011). Information from other cases includes the percentage of recovery approved by other courts. *See In re Broiler Chicken Antitrust Litig.*, 142 F.4th 568, 573 (7th Cir. 2025). The court may also check the requested fee award against class counsel's lodestar, *see Williams*, 658 F.3d at 636, which is a reasonable hourly rate multiplied by a reasonable number of hours worked, *Bankston v. State of Illinois*, 60 F.3d 1249, 1255 (7th Cir. 1995).

The record in this case includes a particularly compelling piece of evidence regarding the market rate: the fee agreements between Loop and class counsel for this very case. One month before filing this lawsuit, Loop agreed to represent Loop for 30 percent of Loop's recovery. Dkt. 258-4, at 3. A year later, in April 2019, class counsel entered into a new fee agreement that expanded the scope of representation to include serving as class counsel. Dkt. 258-5, at 3. In that agreement, class counsel agreed on the same rate, promising "not to petition the Court for an attorney's fee in excess of thirty (30%) of any class recovery." *Id.*

This agreement by itself is powerful evidence that the ceiling for any fee award in this case is 30 percent. Class counsel agreed not to seek fees greater than that. Class counsel are correct that their contract with Loop cannot bind the class, but class counsel identify no reason why the agreement should not bind class counsel. Instead, they say that Loop "voluntarily offered . . . to support a one-third award" because of "the extraordinary recovery here." Dkt. 257, at 48. Class counsel do not cite evidence that Loop agreed to waive the fee cap. Regardless, the court's focus is not on whether the recovery was "extraordinary," but on the what the parties would have agreed to at the outset of litigation. *See Stericycle*, 35 F.4th at 559–60. "An ex ante agreement between the parties is a particularly useful guidepost for determining the market rate," *id.* at 560, so the agreement between Loop and class counsel goes a long way toward showing what a reasonable fee is in this case.

Class counsel acknowledge that their fee agreement is relevant evidence, but they say it is just one data point. They ask the court to also consider their agreement with Cox Automotive, which was for one-third of Cox's recovery, and their agreement with Authenticom, which was for 40 percent. They cite *In re Synthroid Marketing Litigation*, 325 F.3d 974, 976 (7th Cir. 2003), in which the court of appeals affirmed the district court's decision to approve a fee based on the average of several individual fee agreements that class members had with their counsel before class certification.

*Synthroid* is not instructive because the fee agreements in that case were similarly situated: all of them were individual fee agreements with individual class members. In this case, the other fee agreements that class counsel cite are not on equal footing with Loop's fee agreement for multiple reasons. First, neither Cox nor Authenticom were class members in this case. Cox litigated its antitrust case individually and Authenticom could not have been a class

3

member in this case because it is not a vendor; it is one of CDK's competitors. So there were other variables at play.

Second, the Cox and Authenticom agreements were negotiated in 2017, two years before class counsel's final agreement with Loop in April 2019. By 2019, class counsel had more information to assess their risk. Class counsel say that their case appeared *riskier* then because the court in *Authenticom, Inc. v. CDK Global*, LLC, 874 F.3d 1019 (7th Cir. 2017), had "called into question the merits of the claims in this litigation." Dkt. 257, at 59. That is not a fair characterization of the *Authenticom* decision. The court of appeals set aside the injunction, not because it questioned Authenticom's likelihood of success, but because the injunction went "well beyond the scope of the alleged violation." *Id.* at 1021. The court emphasized that "nothing we say should be taken as presaging the eventual outcome of the case." *Id.* at 1024. The court did refer to Authenticom's tying claim as "dubious," *id.* at 1026, but Loop's damages in this case were based on a conspiracy claim under § 1 of the Sherman Act, not a tying claim. Nothing in *Authenticom* should have fundamentally altered counsel's risk assessment.

In any event, the *Authenticom* decision preceded the 2019 retainer agreement by almost a year and a half. By class counsel's own assertion, "firms across the country filed seven copycat class action complaints" by 2019, alleging the same antitrust violations as in class counsel's cases. Dkt. 257, at 21–22. The level of interest expressed by other law firms is one meaningful indicator of risk. *Stericycle*, 35 F.4th at 565. In fact, three months after Loop and class counsel entered into their 2019 agreement, Cox settled its claim against CDK, *see In Re: Dealer Management Systems Antitrust Litigation*, No. 18-cv-864 (N.D. Ill.), Dkt. 723, which is additional evidence that class counsel knew when it entered into the 2019 agreement that it had a reasonably strong case.

4

Third, and perhaps most important, class counsel's 2019 agreement with Loop is the only agreement that contemplated a class action. Proceeding as a class meant that potential damages were multiplied many times. The expense and difficulty also increased for class counsel, but the change was not commensurate. This is demonstrated by class counsel's own billing records, which show that more than half of counsel's time spent on this case also benefitted counsel's other cases against CDK or Reynolds. Dkt. 258-6 and Dkt. 258-7. This suggests that proceeding as a class created significant economies of scale, increasing class counsel's potential fee award at a much higher rate than counsel's increased expense and workload.

Even if class counsel's agreement with Loop were not decisive, fee awards in other cases support the conclusion that a fee award of more than 30 percent of class recovery would be excessive. It is true that courts commonly approve fees that represent one-third of the total, after expenses are subtracted. *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 782–83 (7th Cir. 2014). But the court of appeals has repeatedly held that market rates often reflect a declining percentage for counsel as the total recovery increases into the hundreds of millions. *Stericycle*, 35 F.4th at 561 ("[I]ncreasing attorney fees, but declining percentages, as the settlement fund increases . . . is generally consistent with widespread practices in cases generating funds to be distributed."); *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 959 (7th Cir. 2013) ("[N]egotiated fee agreements regularly provide for a recovery that increases at a decreasing

rate."); *In re Synthroid Marketing Litigation*, 325 F.3d 974, 975 (7th Cir. 2003) ("[T]he market rate, as a percentage of recovery, likely falls as the stakes increase.").[1]

This view is consistent with the studies cited in this court's preliminary approval order, stating that the average percentage of recovery awarded to attorneys in antitrust class actions of comparable size ranges between the low-to-high 20s. Dkt. 253, at 5. It is also consistent with *In re Broiler Chicken Antitrust Litigation*, 142 F.4th 568 (7th Cir. 2025), which is this circuit's most recent case considering attorney fee awards in antitrust class actions. That case involved a settlement totaling $181 million. To determine an appropriate award, the district court compiled a spreadsheet of approximately 50 antitrust cases that resulted in settlements of more than $100 million. *Id.* at 572–73. Reviewing the data compiled by the district court, the court of appeals concluded that class counsel were entitled to 26.6 percent of net recovery. *Id.* at 575. Class counsel cite a handful of other cases in which district courts around the country approved a fee award that represented at least one-third of a settlement more than $100 million. Dkt. 257, at 71–72. But "district courts need data rather than cherry-picked examples." *Broiler Chicken*, 142 F.4th at 575 (internal quotation marks and alterations omitted). Class counsel cite no evidence that the examples they cite are representative, so they are not persuasive.

---

[1] One of class counsel's experts, William B. Rubenstein, criticizes the view that class counsel's percentage of recovery should decrease as the settlement increases, arguing that it creates a disincentive for class counsel to obtain the largest settlement possible for the class. Dkt. 260, ¶ 24. Rubenstein makes a fair point, but it is inconsistent with the general practice recognized by the Seventh Circuit, so the court cannot adopt Rubenstein's view.

In light of class counsel's own agreement with Loop and the data from other cases, the court concludes that any fee award exceeding 30 percent would be excessive. A lodestar crosscheck confirms this conclusion.

Class counsel contend that their lodestar is approximately $66.5 million, which results in a multiplier of 3.09 if the counsel are awarded one-third of the net settlement. Class counsel's billing records total more than 500 pages, Dkt. 258-6 and Dkt. 258-7, so the court has not scrutinized every entry. The court accepts the reasoned opinion of class counsel's expert, retired federal judge Thomas E. Scott, that the billing entries are reasonable. *See* Dkt. 259. Nevertheless, the lodestar appears to be significantly bloated, for two reasons.

First, more than $36 million of the lodestar comes from work that class counsel used not just for this case, but also for its other cases against CDK. Counsel represent that they have excluded time that did not benefit this case specifically, and they contend that they would have the same lodestar for this case, even if the other cases against CDK did not exist. Maybe so, but class counsel do not dispute that they have received full compensation for their work on those other cases. So relying on all of the "common benefit" time to justify a higher fee results in class counsel being paid twice for the same work. Class counsel's "common benefit" time involved four other cases, so even if the class action obtained a disproportionate share of the benefit, it would not be reasonable to give counsel credit for more than half of that time in this case.

Second, class counsel used their 2025 rates to calculate their lodestar, and those rates appear to be substantially higher than their 2017 rates, when they first began billing for this case. Class counsel did not disclose all of their previous rates, but their 2017 engagement letter with Authenticom states that lead counsel's hourly rate was $700 per hour and the rates of

7

"attorneys who assist" him were $350 to $1,100. Dkt. 258-2, at 3. Lead counsel's 2025 rate is $1,825 per hour; the 2025 rates of other attorneys on the case range from $590 to $1,795. Dkt. 258, ¶ 92. So the range of class counsel's rates increased by about two-thirds between the beginning of the case and the present. Lead counsel's rate more than doubled.

Class counsel point out that awarding fees based on current rates is a common practice and has been approved by the court of appeals. Dkt. 257, at 88–89 (citing *Mathur v. Bd. of Trs. of S. Illinois Univ.*, 317 F.3d 738, 745 (7th Cir. 2003); *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 255 n.5 (7th Cir. 1988)). But the cited cases state that awarding counsel's current rate is justified as a substitute for awarding counsel their historical rate plus interest to account for the delay in payment. The difference between class counsel's 2025 and 2017 rates exceeds any interest that counsel would have received to compensate for the delay in payment.

Accounting for these two factors would significantly reduce the lodestar, even if the individual entries are reasonable. If the court were to give class counsel credit for half of the "common benefit" time and approve fees at 80 percent of their current rates, this would reduce the lodestar to less than $40 million, leading to a lodestar of more than five.

The court of appeals has rejected a categorial rule that "any percentage fee award exceeding a certain lodestar multiplier is excessive." *Williams*, 658 F.3d at 636. But a reduction may be appropriate if the requested fee award is "disproportionate to the amount of work expended by class counsel." *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 832–33 (7th Cir. 2018). And the court of appeals has observed that "[m]ultipliers anywhere between one and four . . . have been approved," but a multiplier of four is "quite rare." 945 F.2d 969, 976 (7th Cir. 1991). In fact, class counsel cite no examples of similar cases in which a court in the Seventh Circuit approved a multiplier higher than three.

Class counsel say that a higher multiplier in this case is appropriate because this case was unusually risky. They rely primarily on the fact that they had to start from scratch: there were no prior cases or government investigations that demonstrated this case's likelihood of success. This argument is fine as far as it goes. It is true that the absence of a government investigation or other case increased the uncertainty and the work required. But that is true of most cases. It is the exception rather than the rule for counsel to be able to piggyback on another's work before filing their lawsuit. If they can, that would be a reason for *reducing* the award from what would otherwise be reasonable. It does not necessarily follow that attorney fees "ride an escalator called risk into the financial stratosphere," *Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014), simply because counsel started from scratch.

Class counsel list other reasons they believe the case was especially risky, including the novelty of their legal theories, the complexity of their case, the large investment required, the high quality of CDK's defense, and the fact that Kellogg Hansen did not share the risk with other firms. Class counsel do not support their contention that their legal theory was novel. The theory that was proceeding to trial was a § 1 conspiracy claim within a well-established legal framework. As for the complexity of the case, class counsel's large investment, and CDK's vigorous defense, those are factors already fully reflected in class counsel's lodestar.

The court acknowledges that class counsel took on a large risk when accepting this case, so a generous lodestar multiplier is appropriate. But as previously discussed, the risk was somewhat reduced when class counsel agreed to represent the class in 2019: counsel began settling these cases only three months later. And even class counsel's own expert does not try to justify a multiplier of more than four. All this is further support for the conclusion that a fee award of more than 30 percent would be excessive.

The court also acknowledges that no class member, including Loop itself, objected to class counsel's fee request. And some class members sent representatives to the hearing in support of the settlement proposal, and implicitly, the fee request. This is one indicator of the fair market rate, and it factors into the court's consideration of whether the fee should be reduced, and, if so, how much the reduction should be. But many factors may influence a class member's decision whether to object, including cost, uncertainty, or lack of information. The court has an independent obligation to ensure that the attorney fees are fair and reasonable, regardless of the number of objections. The court's review of the relevant information shows that a reasonable award of attorney fees in this case falls within the range of 25 to 30 percent. In light of the excellent results achieved for the class and the lack of any objections from class members, the court will approve an award of 30 percent of the net settlement.

ORDER

IT IS ORDERED that class counsel's motion for attorney fees is GRANTED in part. The court approves attorney fees in the amount of $185,157,529, which is approximately 30 percent of the settlement after expenses and the service award are subtracted. The court will issue its final order approving the remainder of the settlement after the parties' September 9 deadline for objecting to the form of the order.

Entered September 5, 2025.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge
